ELIZABETH HAYS
vs.                    }   December Term, 1848.
CHARLOTTE HENRY ET AL.

[WIFE'S RIGHT TO PERSONALTY—FRAUDULENT CONVEYANCES.]

It is not in the power of a husband in this state, by will, to deprive his widow of that portion of his personal estate, to which she is entitled by law.

Yet, there can be no doubt of his right to dispose, absolutely, of this description of property during his life, independently of the concurrence and exonerated from any claim of the wife ; provided, the transaction be not colorable merely, and be unattended with circumstances, indicative of fraud upon the rights of the wife.

One of the badges of fraud in such cases, is the retention of the possession of the property by the husband, after the transfer of the title, or keeping the deed in his hands after its execution.

It being proved, that the husband, with a design to deprive his widow of her share of his personal estate, executed the conveyances in question, but did not part with the possession, but lived upon and enjoyed the property until his death—the deeds were set aside as frauds upon the rights of the wife.

[This case was removed from the equity side of Baltimore County Court. The bill filed by the widow of Simeon Hays, stated, that he died in the year 1847 ; that he had for upwards of twenty years previous cohabited with Charlotte Henry, by whom he had two children ; that he also had two children by the complainant ; that on the 2d of April, 1844, having converted certain of his estate into money, the said Hays bought with it a house and lot in Baltimore, subject to a ground rent, and caused it to be conveyed to said Charlotte, who, on the 9th of the same month conveyed it to him, in trust, for her use during her life, with remainder to their two children, and, in case said children died without issue, to the two children of the complainant ; that both deeds were recorded on the same day ; that Hays had always treated the property as his own ; and, that the conveyances were made solely for the purpose of preventing any of his property from going to his wife, the complainant, at his death. It was further stated, that letters of administration on his estate had been granted to the complainant, and, that if the property in question, were decreed to be a

part of Hays' estate, there would be more than sufficient to pay all his debts, and the expenses of administration ; and prayed that such a decree might pass, and, that she might be permitted to receive a third of the residue.

The answer of Charlotte Henry, stated, that the property had been bought with her money ; and, denied that the deceased had exercised such acts of ownership over it, as were inconsistent with the nature of the trust ; and further denied the complainant's right to bring her title in question, in the manner attempted. A commission to take testimony was subsequently issued and returned, the nature and effect of the evidence taken under which, will appear from the Chancellor's opinion :]

THE CHANCELLOR:

It has been conceded in this case, and certainly it could not be disputed, since the decisions in *Griffith* vs. *Griffith, Ex'rs., 4 Harr. & McHenry*, 101 ; and *Coomes* vs. *Clements, 4th Harr. & Johns.*, 480, that it is not in the power of a husband in Maryland, by will to deprive his widow of that portion of his personal estate to which she is entitled by law ; the amount of the share depending upon circumstances, being one-third or one-half, according to those circumstances. This has been the settled and unquestionable law in this state, since the decision of the cases referred to.

But, although the husband is not permitted to deprive his wife of her reasonable share of his personal estate by will, there can be no doubt of his power to dispose absolutely of this description of property during his life, independently of the concurrence, and exonerated from any claim of the wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition by the husband be *bona fide,* and no right is reserved to him, then, though made to defeat the claim of the wife, it will be good against her, because, as was observed in the argument, an act cannot be denounced as fraudulent which the law authorizes to be done.

But if it be a mere device or contrivance, by which the husband, not parting with the absolute dominion over the property during his life, seeks, at his death, to deny his widow that share of his personal estate which the law assigns to her, then it will be ineffectual against her.

One of the badges of fraud in such cases, is the retention of the possession of the property by the husband, after the transfer of the title, or keeping the deed in his hands after its execution. *Smith* vs. *Fellows,* 2 *Atkinson,* 62, 377.

In *Hall* vs. *Hall,* 2 *Vernon,* 276, the court said, if goods are absolutely given away in his lifetime, this will stand good against the custom (under which the wife claimed.) But if he has it in his power, as by keeping of the deed, &c., or if he retains the possession of the goods, or any part of them, this will be a fraud upon the custom, and of course will not prevail against the claim of the wife.

In 2 *Roper, on Husband and Wife, pages* 17 *and* 18, the author, after reviewing the cases, lays down this rule as the true one to be extracted from them ; that, if the act (of alienation) be accompanied with the delivery of the property, and every thing is done, (so far as it can be,) before the husband's death intestate, to give effect to the transaction, and there is no reservation, and the husband divests himself of all interest in the property, then the act will be necessarily valid, as a due exercise of his admitted right whilst life remained, to dispose of his property in bar of the custom.

It is, therefore, very material in this case to ascertain whether Hays, the husband of the complainant, did part with the possession of the property in question.

That it was purchased by him, and paid for with his money, I entertain no doubt; and, I am persuaded, that the utmost ingenuity will in vain seek to create a doubt upon the subject in opposition to the mass of evidence to be found in the record.

It was purchased of Mr. Perine, and by that gentleman, on the 2d April, 1844, conveyed to the defendant, Charlotte Henry, by the direction, as may be inferred from the proof, of

Simeon Hays. A few days afterwards, to wit, on the 9th of the same month, Charlotte Henry, conveyed the same property to Simeon Hays, upon the trusts in said deed expressed. These two deeds were enrolled on the same day, and the inference is a very natural and fair one, that they are parts and parcels of the same transaction; and, were intended to consummate a purpose contemplated when the purchase was made. That purpose, I am fully convinced, was to deprive the complainant, the widow of Hays, of her share of her husband's estate. This purpose, there is no doubt, could have been accomplished by an absolute and unconditional alienation of the property by sale or gift; and, although such alienation was made with the intent imputed to this act, it would not vitiate it, provided there was a transfer of the possession as well as the title, and no reservation, whatever, to the husband.

But, in this case, Hays did not part with the possession. On the contrary, Mr. Coates stated, that Hays bought the property in question, lived in it, and died in it.

There is, moreover, in the assignment of the lease by Charlotte Henry to Hays, a provision which seems to have been designed to secure him in the possession of the property during his life. The language of the covenant is, "that he shall peaceably and quietly have, hold, use, occupy, possess and enjoy, the said piece of ground and premises," &c., "without the let, suit, molestation, interruption, eviction or disturbance of the said Charlotte Henry," &c.

It is true, in the declaration of the trust, it is said, that the property shall be held by him, for the sole use and benefit of the said Charlotte Henry, during her life, &c., and after her death, in trust, for the benefit of her children, with a limitation over in the event of their death without issue, for the use of the children of Hays by the complainant; and, therefore, it is contended, that he took no beneficial interest under the assignment, being a mere depository of the naked legal title. But still, the legal title was conveyed to Hays, with a covenant that he should have possession, and the proof shows, that he did in fact, retain the possession and use down to the period of his death in 1847.

The inference, therefore, I think, is very strong, not to say conclusive, that these deeds were the result of a contrivance, invented and put in execution, to deprive the complainant of that portion of the personal estate of her husband, to which by law she became entitled, unless *bona fide* and absolutely sold, or given away by him in his lifetime.

If Hays intended to make a complete and unreserved disposition of the property, why was the deed of trust of the 9th of April executed at all?

Charlotte Henry was perfectly competent to hold the title and deal with the property as she might think fit, and, therefore, it is not easy to imagine a reason for the execution of the trust deed, unless it was the design of the parties to secure to Hays a control during his life.

There is another provision in this trust deed, which I think is worthy of consideration in determining upon its character, and upon the influence which Hays exerted over the disposition of the property conveyed by it. The limitation over, in the event of the death of the children of Charlotte Henry, by Hays, is to his children by the complainant. But, the answer of Charlotte Henry avers, that the property was paid for with her own money, and if this be assumed as true, it is difficult to conceive a reason why, in any event, and upon any contingency, she should be willing that it should be enjoyed by the children of the complainant. This provision in the deed, then, is to be attributed to the influence of Hays, and raises a strong probability, I think, independently of the parol evidence, not only that his money paid for the property, but that, notwithstanding the title was conveyed by Mr. Perine to Charlotte Henry, by his direction, his will controlled its destination.

Though he had utterly discarded his wife, there would appear to have remained in his heart some feeling of affection for his children by her, and to this feeling, as I think, must be ascribed the contingent benefit intended for them.

In view of all the circumstances of this case, I am of opinion, that the complainant is entitled to relief, and shall so decree.

26*

The conveyances, however, I regard to be void, as frauds upon the rights of the wife, and will, therefore, pass a decree for the sale of the property to pay her one-third, with a reservation of equities as to the residue of the proceeds of sale. The solicitor of the complainant may prepare a decree.

[No appeal was taken in this case.]