DOROTHY E. DUNNOCK, BY HER
NEXT FRIEND,
vs.                                        SEPTEMBER TERM, 1852.
SAMUEL DUNNOCK AND LEVIN
DUNNOCK.

---

[ALIMONY—DIVORCE—PRACTICE—JURISDICTION.]

---

UNDER the prayer for general relief, the plaintiff may have any relief consistent with the specific relief prayed, which may be warranted by the allegations of the bill.

Where the whole object of the bill and the specific relief prayed for is a separate maintenance or alimony to the wife, so long as the separation between her and her husband may continue, it may well be doubted if a divorce, *a mensa et thoro*, could be granted under the prayer for general relief.

Under the Act of 1841, ch. 262, and its supplements, alimony is an incident to the power of granting divorces, and cannot be awarded to the wife except as a consequence of the exercise of such power.

But the Act of 1777, ch. 12, sec. 14, giving the Chancellor as full authority in cases of alimony as the Ecclesiastical Courts have in England, is not repealed by the Act of 1841, ch. 262.

Upon a proper case, this Court will grant the wife alimony, or a suitable maintenance by the husband, or out of his estate, though a divorce, *a mensa et thoro*, be not asked for.

The wife under certain circumstances is entitled to alimony, to be paid by the husband, or out of his estate, but no case has been found where the Court, upon an application for alimony, has investigated the character of alienations of property made by the husband, so as to compel his alienee to pay the allowance to the wife.

A conveyance, though fraudulent as to creditors, is yet good against the grantor and volunteers claiming under him.

Though a husband cannot *by will* deprive his wife of her share of his personal estate, yet he has the power to dispose absolutely of such property during his life by sale or gift, and if he reserves no right to himself, the transfer will prevail against the wife, though made to defeat her claim.

But if the conveyance or transfer be a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her share of his personalty, it will be ineffectual against her.

Where a paper is never produced, nor its absence accounted for, its contents cannot be proved by parol.

A conveyance of personal property by a husband which would be good against the claim of the wife in case she survived him, is also good against her claim for a living during their separation.

According to the practice in this State, an objection for the want of jurisdiction may be taken at the hearing, though not presented either by plea, answer, or demurrer.

The Act of 1841, ch. 163, is confined in its operation to the Appellate Court, and the Court of Chancery may, *sua sponte*, refuse relief if it appear from the proceedings that it has no jurisdiction, though the defendant does not make the objection by the pleadings.

The fact that the complainant had previously filed her bill in the equity side of the County Court for a divorce and alimony, is an insuperable objection to the Court of Chancery granting her relief upon her bill there for alimony.

When two Courts have concurrent jurisdiction over the same subject-matter, the Court in which the suit is first commenced is entitled to retain it: the other has no authority to interfere, and will as soon as judicially informed of the pendency of the prior suit dismiss the subsequent proceedings.

———

[The facts of this case are sufficiently stated in the following opinion of the Chancellor.]

———

THE CHANCELLOR:

This case, which has been fully and ably argued by the counsel on both sides, comes before the Court upon a motion to dissolve the injunctions granted upon the filing of the bill, which motion is met on the other side with an application for the appointment of a receiver, as prayed for in the bill, but held over for the coming in of the answer.

The bill, though it probably makes a case which, if sustained

by proof, would entitle the complainant to a divorce, *a mensa et thoro* does not pray for that relief, but simply that the property in question, sundry negroes, may be placed in the hands of a receiver, and that complainant, from the product of their labor, may have a reasonable allowance for her maintenance and support; or that they may be divided, and she have one-third thereof, whilst she and her husband, Levin Dunnock, are living apart.    And the injunction which was granted was asked for to prevent a sale or other disposition of the property before the case could be heard.

Though under the prayer for general relief, the plaintiff may have any relief consistent with the specific relief prayed, which may be warranted by the allegations of the bill, it may, I think, be well doubted whether upon this bill a divorce, *a mensa et thoro*, could be granted.    The specific relief prayed for, is a provision for the support of the wife during the period that she and her husband may be separated, either by awarding her a reasonable proportion of the hire of the negroes, or by giving her one-third of them, to be held during the separation.    A separate maintenance or alimony, so long as the separation may continue, is the whole object of this bill.    And so far from asking the aid of the Court to make that separation permanent, the door would seem to be designedly left open for reconciliation, and the restoration of the conjugal relations of the parties.  Alimony, under the Act of 1841, ch. 262, which conferred for the first time upon this Court jurisdiction in divorce cases, is but an incident to the exercise of the power granted by that Act to divorce the parties.    The language of the Act is, after authorizing the Court to grant either absolute or qualified divorces, according to the nature of the grounds stated and proved, " and in all cases where a divorce is decreed, the Court passing the same shall have full power to grant alimony to the wife," &c.    And I take it to be very clear that proceeding upon that Act and its several supplements, alimony cannot be awarded to the wife, except as a consequence of the exercise of the greater power to pass a sentence of divorce.

This Act, as I conceive, is in conformity with what I under-

stand to be the rule in the English Ecclesiastical Courts, that alimony or a separate maintenance is never allowed but as a consequence of a divorce, *a mensa et thoro*. And that the Court of Equity there has no jurisdiction in cases of divorce, and will abstain from granting alimony until the separation of the parties has been decreed by the Ecclesiastical Court. This is not only the view of the subject taken by the late Chancellor in the case of *Helms* vs. *Franciscus*, 2 *Bland*, 565, but that of the Court of Appeals in *Crane* vs. *Meginnis*, 1 *Gill & Johns.*, 463. At page 474, the Court say, " That alimony is the maintenance afforded to the separated wife for the injury done her by her husband in neglecting or refusing to make her an allowance suitable to their station in life, and is treated as a *consequence* drawn from the divorce, *a mensa et thoro.*" This the Court say is the conclusion to which they have come after a general review of the British law of divorce and alimony.

But by the Act of 1777, ch. 12, sec. 14, it is declared, " That the Chancellor shall and may hear and determine all causes for alimony in as full and ample manner as such causes could be heard and determined by the law of England in the Ecclesiastical Courts there." And it is urged, and I am not at all prepared to say that the argument is not a sound one, that this Act is still in force, and that the wife may not avail herself of its provisions, notwithstanding that under the Act of 1841, ch. 262, this Court, when granting a divorce, may as an incident thereto award her alimony. I do not suppose it was the intention of the Legislature in passing the latter Act, to compel the wife to sue for a divorce, whether she wished it or not. That is, that she must when abandoned or maltreated by her husband, either ask to have the sacred contract of marriage dissolved, or be denied the right to apply for a reasonable maintenance out of his estate to save her from suffering. She may have insuperable scruples against asking for the dissolution in whole or in part of a tie so solemn and sacred, and such scruples are certainly worthy to be respected, and when they exist deserve admiration rather than punishment. I therefore think, that in a proper case an application on the part of the

wife to be allowed alimony, that is, a suitable support and maintenance for herself and children by the husband or out of his property, would be favorably entertained by this Court, although a divorce, *a mensa et thoro*, was not likewise asked for.

But the bill in this case does not ask that alimony may be paid the complainant by her husband, or out of his estate. After averring the marriage, and that her husband abandoned her in the year 1849, and has not since returned, the bill proceeds to charge that the husband being possessed and having title to sundry negro slaves, undertook to convey the same to a certain Samuel Dunnock: that the instrument by which the conveyance was made, was obtained from her husband, who was of intemperate habits, and liable to improper influences by the undue importunities of his relations, and that although it purports to be for a valuable consideration, yet no such consideration was in fact paid, but that the design of the parties was to defraud the complainant of her right to a reasonable maintenance, and of all interest either present or prospective in the property. And the prayer is that the negroes may be placed in the hands of a receiver; and that from their hire a reasonable provision may be made the complainant, or that they may be divided, and she be allowed to take one-third thereof so long as the separation between her and her husband may continue. The bill also contains an allegation that the complainant has been left by her husband without any adequate means of support, and in destitute circumstances. And it is upon these allegations, of marriage, abandonment, destitution, and the imputed fraudulent character and motives of the conveyance, that the peculiar prayer for relief is prayed.

The instrument in question is a bill of sale of sundry negro slaves, executed for the consideration, as therein expressed, of twelve hundred dollars, paid by the grantee to the grantor, and the objection of an improper stamp having been used, being obviated in the mode pointed out by the Act of Assembly, it was then duly recorded in the proper office. This bill of sale is set up by the answer of Samuel Dunnock, the grantee,

as a *bonâ fide* and valid instrument, every allegation affecting its fairness being peremptorily denied; the answer averring that the respondent at the time of its execution gave the grantee his bill, obligatory for the amount of the purchase-money, of which he has since paid eight hundred dollars, and that he is ready and willing to pay the balance due thereon whenever lawfully required so to do.

The question, therefore, is not simply whether this complainant is entitled to a decree for alimony, or a separate maintenance out of her husband's estate, but the Court is called upon as a preliminary question to decide whether the impeached deed is fraudulent or not. No case has been cited, nor have my researches enabled me to find one, in which the Court when applied to to decree a separate maintenance to the wife, has engaged in an investigation into the character of alienations of property made by the husband, so as in effect to compel the husband's alienee to pay the allowance to the wife, which is precisely the object and prayer of this bill.

The wife under certain circumstances is entitled to alimony, or a separate maintenance, to be paid by the husband or out of his estate. *Helms* vs. *Franciscus*, 2 *Bland*, 568; *Ball* vs. *Montgomery*, 2 *Ves, Jr.*, 195; *Duncan* vs. *Duncan*, 19 *Ves.*, 395; *Mix* vs. *Mix*, 1 *Johns. Ch. Rep.*, 110. The decree of the County Court in the case of *Wallingsford* vs. *Wallingsford*, 6 *H. & J.*, 485, was reversed upon the ground in part that it did not direct an income to be paid for the maintenance of the wife out of the husband's estate, and that it did not create a personal liability in the husband to pay any sum of money.

The deed in this case is vindicated against the attack made upon it by the bill, upon the ground that it was executed for a *bonâ fide* and valuable consideration, and with no intent to defraud the complainant, or any other person or persons, of their just rights; and a number of witnesses have been examined on the part of the complaint, to prove by the declarations of the defendant, Samuel Dunnock, that the consideration was not paid. I do not, however, consider it necessary to examine into and decide upon the sufficiency of this evidence

to establish the voluntary and fraudulent character of the deed, which I should be compelled to do if a party was before the Court competent to impeach it. There can be no doubt, of course, that, however the conveyance might be successfully assailed by a creditor of the grantor, it is good against him, and volunteers claiming under him. And there is as little room to doubt that though a husband cannot by *will* deprive his wife of her reasonable share of his personal estate, he has the power to dispose absolutely of this description of property during his life, by sale or gift, and, if he thinks proper, gratuitously to part with his personal property in his lifetime, reserving no right to himself, then, though the transfer was made to defeat the claim of the wife, it will prevail against her. But if the conveyance or transfer be a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deny his widow that share of his personal estate which the law would assign to her, then it will be ineffectual against her. This was the conclusion to which I came upon an examination of the authorities in the case of *Hays* vs. *Henry*, 1 *Maryland Chancery Decisions*, 337.

In this case the bill of sale from Levin to Samuel Dunnock is absolute and unconditional upon its face, and the possession and control of the negroes appear to have gone along with the conveyance. In the deposition of *Stewart Vickers*, something is said about what the witness calls an off-set, which he says he slightly looked over, and by which Samuel was to return the negroes to Levin when he called for them, or forfeit $1200. This proof in regard to the paper called the off-set is objected to by the defendant's counsel, the paper not being produced or its absence accounted for, and it is very clear that without producing it or accounting for its absence, its contents could not be proved by parol. The same witness further proved that Levin "did not say whether he had or had not received any money for the negroes;" "the way they talked (but I do not recollect the exact words) was that he had made a bill of sale of his negroes to deprive his wife of them; that he was going off, and did not know whether he would ever come here

any more or not, and if he did not return he wanted his mother and brother's family to have them." This conversation occurred in August or September, 1849, shortly after which Levin Dunnock must have left home, and the negroes then and ever since have been in the possession of the grantee in the conveyance.

The question then in this view of the case is, whether there is evidence in opposition to the plain terms of the deed to show such a reservation of right in the husband as would prevent its taking effect against the claim of the wife in case she survived him. It is not enough to show that the conveyance, assuming it to be without a valuable consideration, was made to defeat the claim of the wife; that the law allows the husband to do by gift, so far as his personal estate is concerned, provided there be no right reserved to himself, and it is not a mere fiction, by which, not divesting himself of the dominion over his property during his life, he attempts after his death to deprive her of her distributive share thereof. Taking the whole of this transaction together, as explained by this witness, I am unable to see that kind of reservation of right in the husband of the complainant which would defeat his unquestionable right to give away his personal property, to the prejudice of her claim to a distributive share after his death.

The bill of sale was absolute upon its face, the alienation was accompanied with the delivery of the possession, and no act was omitted by the husband to give full and complete effect to the transaction during his life. The off-set spoken of by the witness, supposing his evidence of its contents to be admissible, did not bind Samuel Dunnock to return the negroes to Levin when he should call for them, but to return them or forfeit $1200. And it is certainly reasonable to infer, from the declarations of Levin, deposed to by the same witness, that it was at least quite probable that he never would return again, or demand a redelivery of the negroes. The grantor then did not retain his dominion of the negroes, because the paper which he had taken from the grantee (assuming its contents are properly proved), did not bind the latter to return them, but to do so or pay $1200. And, moreover, the grantor made

known his determination then to leave the country, perhaps
for ever, and has in point of fact gone away to parts unknown,
and has never since been heard of.    It is, therefore, I think,
impossible to characterize this transaction as a "mere device
or contrivance by which the husband, not parting with the
absolute dominion over the property during his life, seeks,
when he shall die, to deprive his widow of the share of his per-
sonal estate which the law would assign to her."

Assuming, then, as it seems to me may be done, that if the
complainant should survive her husband, the conveyance made
by him of these negroes would prevail in opposition to her
claim for a distributive share of them under our act of Assem-
bly, it would seem to follow, necessarily, that it must also be
good against the pretensions set up by this bill.    It would be
difficult to maintain that a transfer which is sufficient to defeat
the right which devolves upon the wife, upon the death of her
husband—a right which he cannot take from her by his will—
may yet be successfully impeached by her in his lifetime, upon
the ground that he has abandoned and left her without sup-
port.    So far from this being the case, the right to the share
which the legislature thought fit to assign the wife upon the
death of her husband, may be supposed to present stronger
claims to judicial protection than a right resting simply upon
judicial precedents, however well-founded they may be in prin-
ciples of equity.

It is urged by the complainant's solicitor that the grantee
in this bill of sale is a stranger to all the equities between the
true parties, except so far as he is a party to the alleged fraud
upon the rights of the wife, and consequently he cannot be per-
mitted to question her equitable claim to a maintenance against
her husband.    But surely this stranger, as he is called, may be
allowed to show that the conveyance taken by him is not a
fraud upon the rights of the wife, either because it rests upon
a *bona fide* and valuable consideration, or because, if merely
voluntary, it is but the exercise of the husband's incontroverti-
ble right, during his life, to dispose of his personal property
as he pleases, independent of her concurrence, and for the
purpose, if he thinks fit, of defeating her claim to it.

It is said, moreover, that the fate of this injunction depends exclusively upon the bill and answer, and that the answer raises no objection to the jurisdiction of the Court to decree maintenance, and authorities are cited to show that in ordinary cases the defendant is confined to defences set up in his answer. But one of the cases referred to by the complainant's solicitor proves, that though the defendant answer the bill, and issue be joined thereon, he may at the hearing object that the case made by the bill does not entitle the party to equitable relief. *Chambers* vs. *Chalmers, et al.*, 4 *G. & J.*, 438. And there would seem to be no doubt that, according to the practice in this state, an objection for want of jurisdiction may be taken at the hearing, though no such objection is presented either by plea, answer, or demurrer. The Act of 1841, ch. 163, provides that upon an appeal to the Court of Appeals, the party who was defendant in the Court below shall not, in the Appellate Court, be permitted to urge an objection to the jurisdiction, unless it shall appear by the record that such an objection was made in the Court below. But this act is restricted in its operation to the Court of Appeals, and I am quite satisfied that this Court may, *sua sponte*, refuse to grant relief if it be apparent from the proceedings that it has no jurisdiction, though the defendant does not think proper or may omit to make the objection by the pleadings.

There is, moreover, another objection to the relief prayed by this bill, and to the interposition of this Court in behalf of the complainant, for the purpose for which she has invoked its aid, and which is presented by the answer, and which appears to be insuperable. The answer alleges, that prior to the filing of the bill in this Court, the complainant filed her bill on the equity side of Dorchester County Court, praying to be divorced from her husband, and for alimony, which bill is still depending in that Court, and that, consequently, this Court has no jurisdiction in the premises, and a copy of the bill so filed in Dorchester County Court, duly authenticated, is filed as an exhibit with the answer. It thus appears that before the present bill

was filed, a Court of competent jurisdiction had possession of this subject of alimony. It is true Samuel Dunnock, the grantee in the bill of sale, was not a party to the bill filed in Dorchester County Court, but he might by an amended or supplemental bill have been made a party, and the question now raised between him and the complainant have been litigated in that Court. The question of the right of the complainant to alimony was distinctly presented by her bill in the County Court, and constitutes a part of the relief specifically prayed for, and it is undoubtedly competent to that Court to say whether she is entitled to that relief or not.

Suppose this Court, upon the bill which she has exhibited here, was to decree her alimony, or an allowance out of these negroes, or the fruits of their labor, and the County Court should, upon the bill depending there, decide that she has no such claim, there would be a clear conflict between the two Courts. To avoid this danger the rule is well established, that when two Courts have concurrent jurisdiction over the same subject-matter, the Court in which the suit is first commenced is entitled to retain it, and the other co-ordinate Court has no authority to interfere, and will, as soon as judicially informed of the pendency of the prior suit, dismiss the subsequent proceedings.

The bill in the case of *Brooks* vs. *Delaplane*, 1 *Maryland Chancery Decisions*, 351, was dismissed in accordance with this principle, which in another case, subsequently decided, received the full sanction of the Court of Appeals. See case of *Albert and Wife* vs. *Winn & Ross et al.*, 7 *Gill*, 446.

Being of opinion, for these reasons, that the complainant cannot have relief here, I must dissolve the injunction, the case not having matured or been submitted for final decree.

---

James A. Stewart, and E. Griswold, for Complainant.
E. R. Hooper, and J. A. Spence, for Defendants.

---

[An appeal was taken from the order dissolving the injunction, passed in conformity to the above opinion, which is still pending.]