## CATHARINE PADFIELD

*v.*

## WILLIAM R. PADFIELD *et al.*

1. WIDOW—*has no right to share in personal property disposed of by her husband in his lifetime.* Any disposition of personal property and credits by a husband, in good faith, where no right or interest is reserved to him, either present or ultimate, though made to defeat the rights of his wife, will be good against her.

2. Where a husband transferred to one of his sons notes and evidences of indebtedness to the amount of $60,000, under an agreement that he was to have one-third, and at the donor's death the son should deliver the balance to certain trustees for the donor's other two children, in consideration of which the son was to pay his father $2000 annually, while he lived, for support: *Held*, that the transfer was based upon a sufficient consideration, and placed the property beyond the father's reach, and that his widow could not claim any dower in the same.

3. If the husband had retained, the right to control the property and resume the same at pleasure, the gift would have been in fraud of the rights of his wife, and, on his death, she could have recovered her share in the same, as given by the statute.

4. There is nothing in the statute respecting estates of deceased persons, that in the slightest degree prevents a husband from disposing of his personal property free from any claim of his wife, whether by sale, gift to his children, or otherwise, in his lifetime.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. C. W. & E. L. THOMAS, for the plaintiff in error.

Mr. JAMES M. DILL, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by plaintiff in error, in the St. Clair circuit court, against defendants in error. The bill alleges that Thomas Padfield, the late husband of plaintiff in error, in his lifetime, and for the purpose of evading the statute, and to deprive her, at his death, of any share in his personal estate, transferred to his son William a large amount of notes and evidences of indebtedness, amounting to about $60,000, under the agreement that he was to have one-third, and, at the father's death, two-thirds of the amount was to be delivered to Ensenmayer and Whitaker, for the use of James M. Padfield and Julia A. Bland, both his children, to be disposed of as directed by the will of Thomas Padfield; and William was, by the agreement, to pay to his father $2000 annually, while he lived, for his support; that Thomas Padfield made his will, by which he bequeathed to each of his children $5, and the remainder of his property, of every nature, kind and description, to plaintiff in error; that she, in the time limited by the statute, renounced all benefits and rights under the will; that he, by his will, gave all of the notes, etc., transferred to William, or the proceeds thereof, whether money or land, to complainant. The will was duly probated, and remains in full force.

This contract was held to be valid and binding in the cases of *Padfield* v. *Padfield*, 68 Ill. 210, and *Padfield* v. *Padfield*, June T. 1874; that it was based on a sufficient consideration, and passed the title of the property and placed it beyond the reach of Thomas Padfield; that he did not reserve any interest in or control over the notes, etc., and that all title had

2—78TH ILL.

passed from him; that the law fully supported the transaction, and that neither Thomas Padfield nor his executor could invalidate the agreement or recover the property.

But it is urged that this transaction was void as to plaintiff in error; that, under our statute, a husband has no power to dispose of his personal property so as to deprive his wife of her distributive share therein, and that the demurrer admits the allegation that this transfer was made for the purpose of evading the statute, and preventing her from sharing in his personal property. The doctrine is correctly stated in Kerr on Fraud and ·Mistake, 220, in a note. It is there said: "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide*, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her." And the cases of *Dunnock* v. *Dunnock*, 3 Md. Ch. 140, *Cameron* v. *Cameron*, 10 Smedes & Mar. 394, *Lightfoot* v. *Colgin*, 5 Munfd. 42, *Stewart* v. *Stewart*, 5 Conn. 317, *Holms* v. *Holms*, 3 Paige, 363, are referred to, and fully support the doctrine.

Here, there was a final disposition of the property. It was irrevocably distributed among his children as an advancement, and he reserved no interest, present or ultimate, in the property; and the common law has always recognized the right of a father to advance his children when and as he might choose, without limit as to time or amount, and natural love and affection have always been held a sufficient consideration to support such gifts, when executed. And this followed from the undoubted right that all men possessed—the power of selling or disposing of their property as they choose.

It is true that, where a husband still retained the right to · control the property, and resume the same at pleasure, such a

gift was held to be in fraud of the rights of his wife. But there, the transfer was only colorable, the title still being in the husband, and, being thus entitled, the wife could claim and recover her share, on the death of the husband. In such a case, the husband still remained the owner, notwithstanding the apparent sale, and hence the wife was entitled to share in such property as in any other. The statute gives her a right to one-third of the personal estate owned by her husband at the time of his death, after the payment of his debts, in case he dies intestate. Hence, when the sale is only colorable, and the property may be resumed by the husband, and he thus dies the owner, the wife may participate in its distribution.

The 49th section of the Statute of Wills provides for the distribution of intestate estates amongst his children, or their children, etc., and saves to the widow her dower, as provided by law. The 50th section defines the word to include one-third of the intestate personal estate of her deceased husband forever, after the payment of debts. The 52d section gives to the widow, in all cases, as against creditors, certain specific articles of personal property; and the 53d section gives to widows of persons dying intestate, one-third of the personal estate of their husbands, after payment of debts, as their property forever. There is nothing found in these provisions which, in the slightest degree, prevents the husband from disposing of his personal property free from any claim of the wife, whether by sale, gift to his children, or otherwise, in his lifetime.

Again, the act of 1861, known as the "Married Woman's Law," confers upon *femes covert* the power of disposing of their separate property, absolutely and as they may choose, free from the control of their husbands. It was manifestly the intention of the General Assembly to confer on married women the same and no greater rights, in regard to their property, as were possessed by their husbands. It would be singular, and we can not suppose that the legislature could

have intended to confer other or greater power on the wife than upon the husband. To hold that a *feme covert* has a vested interest in her husband's personal estate, that he is unable to divest in his lifetime, would be disastrous in the extreme to trade and commerce. Owing to commercial necessities, personalty must be left free for exchange, and, to be so, some one must be vested with full power to sell and transfer it free from latent and contingent claims.

We are unable to see any legal grounds upon which to base the claim of plaintiff in error, and the court below did right in sustaining the demurrer and dismissing the bill, and the decree is affirmed.

*Decree affirmed.*