Campbell, J.:
The bill in this case was filed by the widow of Iienry B. Brown, deceased, to recover her dower of certain property *in Big Rapids, Mecosta county, which Brown was claimed to have conveyed to the defend* ants, who were his children, and would have been his heirs-at-law of any property which he owned at Ms death. This deed purported to have been made September 26th, 1871, two days before Brown’s marriage with complainant. The bill claimed that if the deed was genuine it was in fraud of complainant, but disputed its genuineness and delivery.
Both parties to the marriage were beyond middle life, and had grown up children at the time. The defendants were children of Brown by a former wife. They claimed that the deed was delivered and intended to operate at once, and that it was made in fulfilment of a trust in their favor, the land being asserted to have been purchased with the proceeds of property held in trust for them from their mother’s estate.
The court below, on the 14th of October, 1875, made a decree declaring complainant entitled to dower from her husband’s death, December 13th, 1872, and ordering an inquiry as to her damages for dower withheld, and also, as to whether dower could be assigned by metes and bounds, and if not, to compute the present value of the dower interest according to the tables published in the Compiled Laws.
On the 4th of May, 1876, a further decree was made, after the commissioner had reported, whereby it was adjudged that dower could not be assigned by metes and bounds, or out of the rents and profits, and allowing a gross sum of three thousand two hundred and sixty-three dollars and forty cents, in lieu of dower, and a further sum of one thousand one hundred and sixty-two dollars and eighty-nine cents, for arrears.
We are satisfied that if the deed had been executed and delivered at the time of its date, it would have been a legal fraud on complainant, under the rule in Cranson v. Cranson, 4 Mich. R., 230. And assuming all that is claimed for defendants on the facts, the land was then owned by Henry *396 B. Brown in his own right, and free from any trust ^whatever. The land in Illinois, which it is asserted was exchanged in part for the property in dispute, the balance being paid by Brown in other ways, was conveyed to Brown by his former wife herself, by an ordinary deed, and without any condition or declaration of trust; the deed declaring the uses to be for his benefit. We are aware of no rule by which a resulting trust could arise out of such a deed to the grantor or her heirs. If any trust arose at all it is shown to have been an express one by parol agreement, which was in contravention of the deed, and which we cannot presume to have been valid. And in the purchase of the property in controversy, the transaction was with the consent of the defendants, who knew how the title was taken, and trusted entirely to a similar parol understanding, which could not avail them under our statutes for any purpose.
In bringing about the marriage, Brown had, and was evidently intended to have, credit for owning the premises in controversy. The deed was not made public, and was unquestionably intended to prevent the dower interest of complainant from attaching, — if the deed itself was really made operative. This was a legal fraud, and could not lose that character by reason of any desire to carry out a previous purpose, concealed from complainant and the public, and continuing concealed during the remainer of Brown’s life.
But, if we were required to consider the facts critically, we are not prepared to believe that the deed was intended to operate until subsequently delivered, and there is no evidence which satisfies us of any such delivery. We think the preponderance of evidence shows that Brown retained his control over the property and its rents during his life, and that this was expected and understood. It is possible he intended the deed to take effect at his death. As defendants are his heirs-at-law, no one can prevent them from asserting title in either capacity, so long as he made no devise, and so long as complainant’s rights are protected. *But as to her, we agree with the court below, that Brown is to be regarded as having died seized of the land.
*397 We have referred to these facts as having some bearing on the last decree as well as the first. But the first decree was undoubtedly a final decree, and was so regarded below. It settled the title of complainant, and the further proceedings were in furtherance and partly in execution of the original decree. It was held in Damouth v. Klock, 28 Mich., 163, that a decree in a partition suit settling the title is a final decree, notwithstanding the further inquiries and determination concerning the feasibility of an actual partition, the necessity of a sale, the taking of accounts, and other necessary action to complete the proceedings. A partition and assignment of dower are proper incidents, to a hill to determine the right, and the remedy in equity is chiefly desirable as enabling the entire rights to be disposed of in one suit. Although there is usually but one final decree in a single cause, yet it is .possible, and in some cases necessary to have more than one. The litigation in Damouth v. Klock further reported in 29 Mich. B., 289, was in many respects quite analogous to the case before us. Inasmuch as an appeal would have been allowable from the first decree, and was not taken, it may be questionable how far it would be proper to disturb it on a subsequent hearing where there has been no further light on the facts. We are not called on to determine this, as we are quite satisfied with its correctness.
It is claimed by the defendants that the date of the delivery of the deed in question is material in determining' whether complainant, under the statute, is entitled to arrears of dower from the death of Brown, or only from demand, as well as whether the improvements made are to be regarded in estimating her rights. No question can arise here concerning improvements, as they were excluded from the computation below. But the question of demand is undoubtedly pertinent, and if the lands were lawfully aliened by Dr. *Brown during his life, arrears are to run from demand and not from his death. — C. L., § Jfl98.
As we have before suggested, we think the first decree determined that the deed did not operate during Brown’s lifetime. We are satisfied it was not intended to be regarded as *398 delivered, and was not delivered in fact at its date. There is no evidence of its delivery afterwards, and no evidence that its place of custody had been changed. It was suggested by counsel for complainant that it might perhaps be regarded as delivered a few days before Brown’s death, at a time when he turned over a large estate in personalty for the benefit of his children, and entirely divested himself of his property. The facts attending this very singular transaction are not sufficiently proven to enable us to determine how far a delivery under such circumstances would be upheld if made. It would require some explanation to remove the doubts which are always suggested by dealings whereby one in advanced years is induced to change his condition from wealth to penury, when he has more than himself to provide for, and makes no provision for them. But we cannot presume a delivery when there has been none originally, and no proof of facts bearing on a subsequent transfer. While, as already intimated, no one can preclude the heirs, if they choose, from claiming to be grantees, and. they have so placed themselves upon this record, we are not prepared to recognize any rights in them as dating in fact earlier than the death of their father. The decree below did not set aside or cancel the deed, but only held, it insufficient to operate to. the prejudice of complainant, or to affect her dower differently from an intestacy, so far as dates were concerned, for computation of values or arrears. Complaint is also made that dower should not have been commuted, and that the allowances are excessive.
Our statutes of dower recognize the propriety of converting into money the value of such property as cannot be actually partitioned. The estate of a dowress may be so ^commuted in case of lands aliened. — C. L., § J$98. And in the present case the improvements made without complainant’s concurrence, and the peculiar character of the property, as substantially an entirety, as well as the manifest injustice of compelling an association in business between parties in such relations as those before us, render the arrangement just and proper. We do not understand the defendants *399 as desiring to occupy any position but that of alienees, and the discretion of the court below was properly exercised.
It is claimed, however, that the value is excessive, first, because treating complainant’s life as a sound one; second, as not allowing for encumbrances; and, third, as based on over estimates.
We see no force in the objection to allowing the complainant’s probabilities of life to be calculated on the ordinary tables. There is no evidence to show her precise condition of health or how much it might affect her chances. The life tables are made up by averaging lives by the actual mortality of strong and sickly alike. No one ever supposed that in a particular ease there is any assurance of their correctness. Like many other contrivances, these tables are accepted as a convenient means of settling averages, siinply because there is no possible test for individual cases. The lives on which they are calculated are not confined to those of known histories or surroundings. They include children and adults, in town and in country, dying of all conceivable causes, from the natural wear of a healthy and prolonged life to disease and accidents, or death from crime or suicide, or at the hands of justice. Any attempt to refine upon these averages by guessing at the probabilities of a given life would be too fanciful and conjectural to deserve attention in determining legal rights. Such attempts have not been made very often, and we are not impressed with their wisdom.
We are not able from the record to determine precisely the amount of the encumbrances. A mortgage for twenty-five hundred dollars, referred to by counsel for defendants, was paid by Brown himself during his life. The only other mortgage was one which covered other lands sold by the original mortgagor after he had conveyed the lands in controversy. We are inclined to think from the testimony that this mortgage is practically no incumbrance at all which can endanger the estate. So far as we can judge the deduction for encumbrances was excessive. The testimony is not clear.
Upon the question of valuation of the property, we think *400 the court below has not erred to the prejudice of defendants. The commutation is quite as low as we should have felt justified. in making it. The complainant has not appealed, and we can make no change in the decree in her favor. The defendants have no cause of grievance. The damages for arrears are not excessive.
The decree must be affirmed, with costs, but with an extension of the time of payment of the dower and arrears to complainant until the first day of May next, the case to be remanded to the court below for the execution of the decree.
The other justices concurred.