### JAMES S. WRIGHT, Admr., *vs.* LAURA I. HOLMES.

### Oxford.    Opinion November 22, 1905.

*Pleading.    Administrator Proper Party to Sue, When.    Husband and Wife.    Gifts. Husband no Vested Interest in Wife's Estate.    Wife's Right to Dispose of her Personal Property in her Lifetime.    P. L., 1895, c. 157; 1903, c. 160.    R. S., c. 63, § 1; R. S., c. 77.*

1.  An administrator is the proper party to sue for the goods which once belonged to his intestate, but which were disposed of by the latter, by a fraudulent and void transfer or gift.

2.  In this state, prior to June 1, 1903, when chap. 160 of the Public Laws of that year took effect, a married woman might make such disposition by gift, voluntary conveyance or otherwise, of her personal property during her lifetime, as she wished, even though her husband was thereby deprived of the distributive share therein, which would otherwise fall to him upon her death; and even though such disposition was made with intent to prevent his receiving such a distributive share.

3.  Whether this rule will apply as to gifts causa mortis, since chapter 160 of the Public Laws of 1903, permitting a widower to waive the provisions of his wife's will, and take his distributive share in her personal estate, as if she had died intestate, is not decided.

On report.    Judgment for defendant.

Trover brought by the plaintiff as administrator of the estate of Emma M. Swift, deceased, to recover damages for the conversion of deposits in three savings banks and one national bank, amounting to

$5767.25, transferred by plaintiff's intestate to the defendant on the ninth day of May, 1903. Emma M. Swift, the deceased, died July 19, 1903, leaving a husband, Chandler Swift, to whom she was married August 5, 1902. Writ dated Sept. 22, 1904. Plea, the general issue. Facts agreed upon and case reported to the Law Court with the stipulation that the Law Court "should pass such judgment as the law and the facts warrant."

The case is sufficiently stated in the opinion.

*James S. Wright and Alton C. Wheeler*, for plaintiff.

*Robert F. Dunton*, for defendant.

SITTING: EMERY, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J. The plaintiff's decedent, a widow possessed of about ten thousand dollars and living at Belfast, married Chandler Swift of Paris, August 5, 1902, and in the same month went to his home to live with him. In the December following, being then ill and probably apprehensive of a fatal result, Mrs. Swift made a will by which she gave her husband $500, and the income of $2000 more. Later she went to the hospital for treatment. After remaining there for seventeen days, she returned to her husband's home, and stayed there until April 5, 1903, at which time she went back to Belfast, her former home. She continued to live in Belfast until she died of tuberculosis of the lungs, July 17, 1903. On May 9, 1903, she assigned to the defendant deposits in various savings banks amounting to $5767.25, and transferred to her her household furniture and certain other goods and chattels, of small value. At the same time she gave away to others practically all of her remaining property, but she gave nothing to her husband. The will above referred to she then destroyed. Subsequently she caused the savings bank books representing the deposits assigned to the defendant to be surrendered to the banks. The deposit accounts were transferred to the defendant, and new books were issued in her name. These books were sent by the banks to Mrs. Swift, who delivered them to the defendant. So far as forms are concerned, these transactions constituted a valid transfer of the deposits to the defendant. The agreed case

states that the transfers were "made in contemplation of death," and that Mrs. Swift died of the incurable disease from which she was suffering at the time the transfer was made. The parties are not agreed as to whether the transfer was a gift or a contract; and if a gift, whether it was absolute and irrevocable, although made in expectation of death, and so a gift inter vivos, *Dresser* v. *Dresser*, 46 Maine, 48; or whether it was ambulatory and revocable, at her will, or in case of her recovery, and so a gift causa mortis, *Bickford* v. *Mattocks*, 95 Maine, 547; *Chase* v. *Redding*, 13 Gray, 418. As the ground upon which the case will be decided is applicable to both classes of gifts, it will not be necessary to scrutinize the gift closely to ascertain to which class it belongs.

The plaintiff, as administrator, brings this action of trover for the savings bank deposits, which were given to the defendant. And as the case makes no mention of debts, we assume that it is brought for the benefit of the husband, as statutory distributee. And as such a case, it has been argued by the learned counsel for the plaintiff.

The defendant presents various objections to the maintenance of the suit, and first, that the plaintiff is not the proper party. It is claimed that if the gift was fraudulent as to the husband, and hence void, as the plaintiff urges, the husband only was injured, and that he only can obtain relief in some appropriate form of action. But we incline to think otherwise. The title to an intestate's personal estate does not pass to his distributees, except through proper probate administration. Distribution, or a right to distribution, presupposes administration. The distributee's share is his proportionate part of whatever fund is left after the debts and expenses of administration have been paid. The distributee is not entitled to a share of the specific rights and credits, and goods and chattels which came into the administrator's hands, but only to a share of the fund produced by administering them, that is, by reducing them to money. This conclusion seems to be sustained by *Dole* v. *Lincoln*, 31 Maine, 422, where the court used this language: "The notes claimed in this suit were formerly the property of the intestate, and they must still be regarded as belonging to his estate, unless he made a *legal* disposition of them during life." The reasoning of the court in *McLean* v.

*Weeks,* 65 Maine, 411, also seems to support the right of the administrator in this respect. See *Abbott* v. *Tenney,* 18 N. H. 109; *Emery* v. *Clough,* 63 N. H. 552.

The defendant further objects that trover will not lie in this case. The declaration in the case counts on the conversion of certain "large sums of money then on deposit" in certain savings banks. It may well be held that trover will not lie for "money deposited" in a savings bank. A depositor is not the owner of any specific money in the bank. He is simply the owner of a right and credit against the bank.

But we will not pursue these technical objections further. The case comes up on report, and we think it is wiser to decide the vital questions at issue between the parties, rather than to send the case off on a question of pleadings.

Upon the merits, the defendant contends that the transactions which we have stated between Mrs. Swift and the defendant are not to be viewed merely as a voluntary gift, but that they are to be supported rather as a contract based upon valuable consideration. The case states that the defendant "verbally agreed to take care of Mrs. Swift as long as she should live, pay her funeral expenses, do some cemetery work on her lot, and provide for the perpetual care of the same," but it does not state that the transfers to the defendant were made in consideration of her agreement to do these things, nor is there sufficient evidence to warrant a finding to that effect. We think the transfers must be treated as a gift.

We are accordingly led to inquire whether a married woman can give away her personal estate, when the obvious effect, and therefore the presumed intent, in part at least, is to deprive her husband of that share in her property which he would otherwise be entitled to after her death, as distributee. It cannot be doubted that under the "married women's" statutes of this state, a married woman may own, manage, sell, dispose of and give away her personal property as freely and absolutely as a married man may do. She may do so without her husband's assent to the same extent that a married man may do so without his wife's assent. R. S., ch. 63, sect. 1; *Allen* v. *Hooper,* 50 Maine, 375; *Hanson* v. *Millett,* 55 Maine, 189; *Haggett* v.

*Hurley*, 91 Maine, 552. It is obvious that the provision which first appeared in R. S., ch. 63, sect. 1, in the general revision of 1903, that "such conveyance without the joinder or assent of the husband shall not bar his right and interest by descent in the estate so conveyed" is to be limited to conveyances of real estate. The. phrase "right and interest by descent" was adopted in P. L. 1895, ch. 157, to express the right which a surviving husband or wife should have in the real estate of a deceased wife or husband, in the place of dower or curtesy, R. S., ch. 77. It had no reference to the interest in the personal estate which comes through distribution. The same meaning is evidently intended to be given to the same phrase in R. S., ch. 63, sect. 1. Besides, the revision of 1903 was not adopted until several months after the gift was made, and Mrs. Swift had died.

But the plaintiff contends that it is contrary alike to the dictates of justice and to the policy of the law to permit a husband or wife to make a voluntary gift of substantially all of his or her personal property, with the intent and necessary effect of depriving the surviving wife or husband of a distributive share. He claims that this gift was a donatio causa mortis, that it is to be likened to a will, and that it cannot be permitted to do what a will would be ineffectual to do. He argues that if Mrs. Swift had given the defendant this property by will, the husband nevertheless might have waived the will and received a distributive share, and he cites upon this point *Jones* v. *Brown*, 34 N. H. 439; *Baker* v. *Smith*, 66 N. H. 422; *Hatcher* v. *Buford* (Ark.), 27 L. R. A. 507; *Headly* v. *Kirby*, 18 Pa. St. 326; Schouler on Wills, sect. 63; 3 Redfield on Wills, 324. The doctrine of these authorities is stated in *Baker* v. *Smith*, supra, after citing the New Hampshire statute of wills, as follows: "What she cannot do in this respect by will she cannot do by another form of testamentary disposition (donatio causa mortis) which is of the nature of a legacy, and becomes a valid gift only upon the decease of the donor." Redfield doubts whether such a gift should stand "where the statute expressly provides that a widow may waive the provisions of the will and come in for her share of the personal estate under the statute by way of distribution."

Unfortunately, however, for this line of argument, in this state, prior to June 1, 1903, when Chapter 160 of the Laws of that year took effect, there was no provision of statute which gave a distributive share of the personal estate to a widower who had waived his wife's will. *Stewart* v. *Skolfield*, 99 Maine, 65. Widows, but not widowers, were permitted to waive provisions of wills, and claim distributive shares, or to claim such shares, when left unprovided for in wills. The statute of 1903 was not in effect when this gift was made. What would have been the result, if that statute had been in effect, we have no occasion to consider. Prior to that statute, a married woman could, by will, place her entire personal estate beyond the reach of her husband. *Stewart* v. *Skolfield*, supra.

Could she do so by gift? The cases in which this question has arisen, as might be expected, have usually been those where a widow has sought to have gifts made by her husband declared invalid. And those in which the question has been answered in the negative have generally been decided upon one or more of the four grounds following:

1. That the gift, being causa mortis, was ambulatory and testamentary in character, and that it was against the policy of the law to permit a donor to override the law and defeat his wife's claim upon his personal estate, by gift, when he could not do it by will. This ground we have already examined and found it not applicable to this case.

2. That the gift was colorable; a gift in form, but not in fact. Substantially all authority is to the effect that where the transfer is a mere device or contrivance by which the husband, retaining to himself the use and benefit of the property during his life, and not parting with the absolute dominion over it, seeks at his death to deprive his widow of her distributive share, it is to be regarded as fraudulent as to the wife, and void. *Brown* v. *Crafts*, 98 Maine, 40; *Thayer* v. *Thayer*, 14 Vt. 107; *Walker* v. *Walker*, 66 N. H. 390; *Hays* v. *Henry*, 1 Md. Ch. 337; *Dunnock* v. *Dunnock*, 3 Md. Ch. 140; *Tucker* v. *Tucker*, 29 Mo. 350; *Brown* v. *Bronson*, 35 Mich. 415; *Smith* v. *Smith*, (Colo.) 34 L. R. A. 49.

3. That the husband is under a legal obligation to support and maintain his wife during his life, and therefore that it is his duty to provide for her as long as he lives. *Thayer* v. *Thayer*, 14 Vt. 107. The force of this argument is lost, however, when, as in this case, the donor is the wife, and not the husband.

4. That the gift was in fraud of the wife's right to a separate maintenance, or to alimony. *Draper* v. *Draper*, 68 Ill. 17; *Tyler* v. *Tyler*, 126 Ill. 525; *Feigley* v. *Feigley*, 7 Md. 537; *Bouslough* v. *Bouslough*, 68 Pa. St. 495; *Green* v. *Adans*, 59 Vt. 602. This principle however does not apply until the parties have separated and have assumed extra-marital relations towards each other. In such cases the wife may be regarded as a quasi creditor, and is to be distinguished from a widow seeking a distributive share. *Small* v. *Small*, 56 Kans. 1, 30 L. R. A. 243.

Some courts have gone to the extent of declaring that a wife, because she is a wife, has a tangible and valuable interest in her husband's estate, springing from the marriage itself, which the law recognizes and protects, *Nichols* v. *Nichols*, 61 Vt. 426; and that a voluntary gift by the husband to a third party may be a fraud upon that interest, and upon her claim to a distributive share. *Thayer* v. *Thayer*, 14 Vt. 107; *Walker* v. *Walker*, 66 N. H. 390; *Manikee Admr.* v. *Beard*, 85 Ky. 20; *Stone* v. *Stone*, 8 Mo. 389; *Murray* v. *Murray*, 90 Ky. 1.

But the almost overwhelming weight of authority is to the contrary. And we think that by that weight of authority the rule is established that the law places no restriction or limitation on the power of the husband to make such disposition by gift, voluntary conveyance or otherwise, of his personal property during his lifetime, as he may wish, even though his wife is thereby deprived of the distributive share therein, which would otherwise fall to her upon his death. He may by gift dispose of his personal property absolutely, without the concurrence and against the will of his wife, exonerated from all claim by her, provided the transaction is not merely colorable, and is unattended by facts indicative of some other fraud upon her than that arising from his absolute transfer, to prevent her having an interest therein after his death. To hold that a wife has a vested

interest in her husband's personal estate that he is unable to divest in his lifetime, would be disastrous to trade and commerce. *Padfield* v. *Padfield*, 78 Ill. 16; *Hays* v. *Henry*, 1 Md. Ch. 337. He may even beggar himself and his family. When he dies, and then only, do the rights of the wife attach to the personal estate. She then becomes entitled to her distributive share. *Lines* v. *Lines*, 142 Pa. St. 149, and note to same case, 24 Am. St. Rep. 490. It was tersely declared in *Small* v. *Small*, 56 Kans. 1; 30 L. R. A. 243, that if the disposition by the husband be bona fide, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her. *Hays* v. *Henry*, supra; *Cameron* v. *Cameron*, 10 Smedes & M. (Miss.) 394. In *Holmes* v. *Holmes*, 3 Paige, Ch. 363, it is said that the owner of personal property, as against everybody but creditors, may make such disposition thereof as he pleases, either by will or otherwise. He cannot therefore commit a fraud upon his wife or children by disposing of it, before his death, in any manner he may think proper, by gift inter vivos, or causa mortis, or by will. Neither the wife nor the children have any interest in the property, except as far as the husband or father may be liable for their support during his life. It is therefore impossible that he should defraud either by any disposition he may make of his property to take effect after his death. *Stewart* v. *Stewart*, 5 Conn. 317; *Williams* v. *Williams*, 40 Fed. Rep. 521. The power of the husband over his personal property by gift inter vivos is absolute. A man's wife and children have no legal right to any part of his goods, and no fraud can be predicated of any act of his to deprive them of the succession. *Pringle* v. *Pringle*, 59 Pa. St. 281; *Dunnock* v. *Dunnock*, 3 Md. Ch. 140; *Tucker* v. *Tucker*, 29 Mo. 350; *Cranson* v. *Cranson*, 4 Mich. 230; *Marshall* v. *Berry*, 13 Allen, 43. In the last case the court said:—"In the absence of any provision of statute inconsistent with the right of the wife to dispose of her personal property in this manner, (by gift causa mortis) we must hold that she has the power." "These gifts," say the court in *Chase* v. *Redding*, 13 Gray, 418, "if confirmed and held good do not impair the rights of the widow. Her right is to the property of which the husband died seized or possessed. These gifts have their full effect in the lifetime of the

donor, and the property is not in his possession at the time of his decease, and does not come under the administration of the executor." A deed of real estate, reserving the life estate in the grantor, made principally for the purpose of depriving the wife of her statutory share in the grantor's estate, but also given in consideration of care bestowed and to be bestowed upon the grantor as long as he lived, was held valid as against the grantor's widow in *Leonard* v. *Leonard,* 181 Mass. 458. "The intent to defeat a claim which otherwise a wife might have is not enough to defeat the deed." The alienation or gift by a husband is held to be valid, even though his intent and purpose in making it was to deprive her of dower, provided there be no fraudulent participation on the part of the grantee or donee in such intent or purpose. *Rabbitt* v. *Gaither,* 67 Md. 95. Mr. Thomson in his work on Gifts and Advancements says in sect. 488 : "A husband may make a gift of his personal property, and thereby deprive his wife and children of all interest therein. She and they have no interest in such property until his death, and therefore he may wholly disregard her and them, and make a gift of his property, either inter vivos, or mortis causa." To the same effect are *Richards* v. *Richards,* 11 Humph. (Tenn.) 429; *Smith* v. *Hines,* 10 Fla. 258 ; *Hatcher* v. *Buford,* 60 Ark. 169; *Lightfoot's Executors* v. *Colgin,* 5 Munf. (Va.) 42; *Ford* v. *Ford,* 4 Ala. 142; *Ellmaker* v. *Ellmaker,* 4 Watts, 89; *Poe* v. *Brownrigg,* 55 Texas, 133; *Samson* v. *Samson,* 67 Iowa, 253; and Dickerson's Appeal, 115 Pa. St. 199. These rules which have for the most part been applied in cases where gifts by the husband have been in question, must, we think, apply with at least equal force in this state to gifts by a married woman.

Applying these rules, to which we agree, to the facts in this case, there is no room left for controversy but that the gift from Mrs. Swift to the defendant must be held valid as against her husband. The plaintiff has presented no other basis for his claim.

*Judgment for the defendant.*