## Petty *vs* Petty *et al.*

APPEAL FROM THE FAYETTE CIRCUIT.

*Fraud.    Marital rights.    Dower.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

CHANCERY. | 4bm215·
112 766

*Case* 43.     4bm215·
114 293

*October 14.*

The allegations of the bill of Jemima Petty.

JEMIMA PETTY, a few days after her intermarriage with Ransdall Petty, filed a bill against him and his children by a former wife, three of whom were infants, in which she charges, in substance, that he, being much the elder, and in good circumstances, as an inducement to the contract of marriage, and as the means of providing for her a support in the event of his death, ''promised and assured to her, that if she would marry him that he would immediately after marriage make a deed of settlement, by which he would settle on her at his death a negro and four thousand dollars out of the price of his land, which he would direct to be sold, over and above one equal third of the remainder of his estate ;'' on which promise she closed the contract of marriage, not doubting or suspecting the sincerity and honor of her intended husband; and that he would faithfully perform all he promised, and that in the event of her surviving him, that she would have at least a moderate support, and was married to him in a few days thereafter.    That a few days after the marriage, her said husband, for the first time, disclosed to her that he had been induced by certain persons to make over his property before he married; that he had been persuaded, that the paper executed by him was only in the nature of a will, and that if she was not indebted or would not run him in debt, that he would alter it by his will; that upon inquiry she discovered that the paper was an irrevocable deed of gift, by which he had conveyed *all* his *lands* and *slaves* to his three younger children, and charged his personal estate with the sum of $1500, to each of his elder children first, and if not sufficient, the residue to be raised out of his slaves and lands left

to the three younger children, reserving only the possession and use of the estate during his own life.

She exhibits copies of the instrument from the office where it had been recorded, and charges that it was executed secretly and without her knowledge, after her engagement with her husband, and after his promise to make the settlement upon her, and just upon the eve of their marriage, and with the express design of cheating her out of her rights and the benefit of the contract made with her, by which she was induced to enter into and consummate the marriage with her said husband; that the deed and charge were made without consideration, and her husband was persuaded and induced by others to make the same under the false impression made upon his mind, that she was extravagant and in debt, and that he could, at any time, revoke the same. She prays that the deed, &c. may be set aside as to her, and her husband be decreed to make the settlement upon her which he promised before marriage, or that some other provision be made for her which is equitable, and for general relief.

Answer of Ransdall Petty.

Ransdall Petty, the husband, answers, confessing all the allegations of the bill, says he was deceived and imposed on by others, as charged in the bill, and prays that the deed may be set aside, and that he may be permitted to make the settlement which he promised.

Answer of infants.

The children answer, (the three younger by their guardian *ad litem*,) controverting all the allegations of the bill, and relying upon the statute of frauds against the enforcement of the settlement.

Deposition of R. Petty, def't.

The husband's deposition is taken, in which he proves explicitly, every allegation of the bill, and further, that he was about thirty-eight years older than his wife; that the deed was kept secret from his intended wife, and was made after the contract of marriage and contract of settlement, and after he had obtained the license to marry her, and he was prevailed on to make it by the fraudulent representations of the draftsman, that it had no other effect than a will, which he had the right to revoke at his pleasure, and by the false impression made on his mind, that his intended wife was extravagant, &c. &c. The deed of gift bears date two days before the marriage.

Witnesses are examined for the children, who prove that R. Petty, though advanced in life and not of strong mind, had capacity enough, as they believed, to understand the nature and effect of the deed of gift in question.

The Circuit Court, upon hearing, dismissed the bill, and Mrs. Petty has appealed to this Court.

*Decree of the Circuit Court.*

The act to prevent frauds and perjuries provides, that "no action shall be brought whereby to charge any person upon any agreement made upon consideration of marriage:" (1 *Stat. Law*, 734.) The contract set up "is an agreement upon consideration of marriage," and falls expressly under the operation of the statute, and cannot be enforced, unless the admission of the contract, in the answer of the husband, and his expression of willingness to carry it into effect, and refusal to rely on or plead the statute, takes the contract out of its operation. That his confession and willingness would have the effect to do so, if he was the only party interested, is very clear: but his confession and waiver of the statute cannot operate upon or effect the interest of others. His children who claim the estate in remainder, as donees, before his answer was put in, have a right to rely upon and claim the protection of the statute. No action shall be brought upon such contract "to charge *any person.*" They *may deny* the agreement, and have done so, and their father's answer cannot conclude, nor even be read against them. To allow parol proof to establish the agreement against them, would open as wide a door to frauds and perjuries as if the father had denied the contract or relied upon the statute.

But if the wife, in the case before the Court, is without remedy, then has the grossest fraud been perpetrated under *cover of the statute of frauds.* She has been cheated and deluded into a marriage contract, with a man much older than herself, and whom, she might reasonably expect to survive, under false premises held out to her, that a provision would be made for her comfortable support, after his death, for herself and children by him, when by a subsequent secret disposition of the *whole* of his estate, by voluntary settlement upon his children by

*A man advanced in life, having children by a former wife, contracts marriage with a woman in moderate circumstances, tho' much younger than himself, and two days before the marriage, conveyed to his children by the first marriage, all his land, slaves and personalty,*

PETTY
*vs*
PETTY *et al.*

without the knowledge of the intended wife, reserving a life estate to himself—held that the Chancellor, on the bill of the wife, even before the death of the husband, may declare the conveyance void, so far as it may deprive her of dower in the lands, in case she survive him, and no farther.

a former wife, she is not only deprived of the benefit of the promised settlement, but deprived of the potential legal rights to which, upon marriage, she would have been entitled, and of which, by any subsequent act, without her consent, she could not be deprived by her husband or any other. But for the fraudulent arrangement, made expressly to cheat her, she would, upon marriage, have become invested with an inchoate right of dower, in the realty of which she could not be divested. She has been fraudulently deprived of this right, by the deeds in question. To the extent, at least, of this interest, if no further, their execution was a fraud upon her, and ought not to stand: *Swain* vs *Perine,* (5 *John. Chy. Rep.* 482–8.) But the question arises, whether she has such interest in the lifetime of her husband as to maintain her bill. She may not survive her husband, and consequently may never be entitled to a perfect right to dower. The deeds are good against the husband, unless he was deceived and deluded into their execution, which does not satisfactorily appear in this case, if even in its present attitude that question could be determined. To decree that the deeds be annulled entirely, would be to carry the relief beyond any possible legal interest or claim that the wife has or may ever have ; and to annul them even as to the wife's potential right to dower, might be a useless act, and by which she might never be benefitted, as she might die first. Yet she might survive her husband, and in that event, would be entitled to a vested interest, but for the deed. Though she has not a vested interest, yet she has, or would have had immediately on the marriage, but for the deed, a potential contingent right, of which she could not be deprived, and that right is valuable to her as affording her a security for future maintenance, in the event of her surviving her husband, though it cannot be enjoyed while he lives. ⌠Though contingent, it is a valuable interest, and may be sold, conveyed or released for a valuable consideration, and the law treating it as valuable, and as an existing incumbrance on land, has provided a solemn mode for its release, guarding the wife from imposition or influence from the husband, in the act of surrender. It has been deemed in Chancery, a sufficient

existing incumbrance, if not surrendered, to authorize the rescission of an executory contract for land.   May not a Court of Chancery, therefore, treat it as such a valuable interest, though contingent, as to free it from the embarrassments which the fraudulent acts of the husband has thrown around it, prior to and in anticipation of marriage?   We think it can.   The fraudulent deed has placed the remainder in a condition in which, by the lapse of time, the death and loss of witnesses, or the sale of the estate to innocent purchasers, she might be forever barred of her right, unless she can have the immediate aid of the Court to remove the incumbrance.   She has a right to be placed in that condition which she would have occupied if the fraudulent deed had not been made, and to be protected against the danger of ultimate loss, if it be permitted to stand.   That can only be accomplished by declaring the deed void as to her right of dower.

As to the personal estate or slaves, as she has no present or potential right to them during the life of her husband, we cannot perceive how any relief can be afforded her as to them.   The law gives her no interest in them ; they belong absolutely to the husband, and he may sell or give them to whom he pleases without her consent. She has no such right or interest in them during the coverture, as to authorize her to ask an annulment of the deed as to them.   And should such decree be rendered, as this Court has no power to enforce the marriage settlement, and the law vests no title in her, present or potential, the title would re-vest in the husband, and he would have the right to sell or give the estate to whom he pleased the next moment.

But though she has no such right during the coverture, we are not prepared to say, that after the death of her husband, without any act of confirmation or other disposition of the estate, than that which passed by the fraudulent deeds, she might not successfully assert her legal right to her share of the personal estate and slaves, as though no such deed had been made.   But as this matter is not now before us, we refrain from any determination upon the question.

May she not, in in such case, after the death of the husband, without any further disposition of the slaves, &c. assert an interest in them?—Qu.

The decree of the Circuit Court is erroneous and must be reversed, and cause remanded, that a decree may be rendered annulling the deed for the lands, so far as the same affects or incumbers the complainant's right to dower in the same, and that the donees be decreed to surrender and convey to the complainant, an undivided third part in remainder, conveyed to them by their father, for and during her natural life, to be allotted and set apart to her as her dower, and held and enjoyed by her as such, after the death of her husband, unless it shall then be made to appear that she would not be entitled to dower if the fraudulent deed had not been made.

Decree reversed, &c.

*Wickliffe* for plaintiff: *S. R. Bullock* for defendants.