## STRANGE, ET AL. V. WATSON.

1. Where a party purchased land for which he executed his several notes, promising to pay the purchase money at different periods, and died; his administrators paid one of the notes, and then by agreement with the vendor rescinded the contract, stipulating to renounce the benefit of it, if the vendor would deliver up the unpaid notes, which was done; afterwards at the request of one of the administrators (representing that the judge of the orphans' court desired it) the vendor wrote a receipt on these notes, acknowledging that they had been paid to him; but it did not appear that

either the vendor or administrator intended to practice a fraud, or that the receipt had been used for an improper purpose: *Held*, that the receipts did not conclude the vendor from showing the circumstances under which they were given, and that no money was paid to him by the administrators.

2. Upon a bill charging a contract for the purchase of land, alledging the payment of the purchase money, and praying that the title to the land may be vested in the vendee or his heirs, the court is not authorized to render a decree in favor of the complainants; although it is alledged that the defendant fraudulently refuses to comply with his contract; and in addition to the special prayer, there is a prayer for general relief.

3. If the complainant mistakes the relief to which he is entitled, in his special prayer, he may have the appropriate redress, under the prayer of general relief; provided, that relief is such as is agreeable to the case made by the bill: but the court will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another.

4. Where the complainant doubts his title to the relief he wishes to pray, the bill should be framed with a double aspect, so, if the court should decide against him in one view of the case, it may afford assistance in the other.

5. By an agreement between the vendor of land and the administrators of the vendee, a contract of sale between the former and the intestate was rescinded after one of several notes for the purchase money was paid, and the unpaid notes were delivered to the administrators: *Held*, that the heirs of the intestate could not compel the vendor by suit in equity to perfect their title, unless they would pay the residue of the purchase money —the vendor asserting that upon such payment he would perform his contract with their ancestor.

Writ of Error to the Court of Chancery sitting at Montgomery.

THE plaintiffs in error alledge in their bill that they are the heirs of Welborn D. Westmoreland, deceased, who died in Macon county, intestate, in the year 1836, and that their intestate purchased of the defendant in the same year in which he died, certain lands particularly described, situated in the county of Montgomery—all which were then in a high state of improvement, with buildings thereon of great value. At the time of the purchase, the intestate paid to the defendant one hundred dollars, and made and delivered to him his several promissory notes for the sum of eighty-nine hundred dol-

lars, the residue of the purchase money. Simultaneously with the making of the notes, the defendant executed and delivered to the intestate his bond in the penal sum of eighteen thousand dollars, or some other large sum, by which he bound himself, his heirs, executors, &c. to make good and sufficient titles to all and every part of these lands to the intestate, his heirs, executors, &c. as soon as the intestate should thereafter pay and satisfy the notes aforesaid.

By the terms of the contract, the intestate, his heirs, &c. was to take possession of the lands, on or about the first day January, 1837, but the defendant would not permit the complainants to enter upon and occupy the lands—still retaining them in his possession when the bill was filed.

Administration of the intestate's estate was duly granted by the orphans' court of Macon, to Seaborn J. Westmoreland and Elizabeth Westmoreland, and in the regular course of their administration, one or both of them "took up and satisfied" the notes given by the intestate to the defendant for the purchase money. Thereupon the defendant was bound to make titles to the complainants, and account with them for the rents and profits of the lands from the first day of January, 1837; the annual value of which is two thousand dollars.

The defendant's bond for titles was taken possession of, by the administrator, Seaborn J., who, as the complainants are informed and believe, fraudulently placed, or caused the same to be placed, in the hands of the defendant; and it is now retained or has been destroyed by the latter, that he may hold and enjoy the lands, and defeat complainants' title thereto. It is alledged that this administrator has removed beyond the limits of the State.

Complainants pray that the defendant may be compelled to produce the bond for titles, if under his control, or if it has been destroyed, that he make known its contents; that the title to the lands which the defendant obliged himself to convey be vested in the complainant; that the defendant be compelled to account with them for the rents and profits since the first day of January, 1837, and that he be adjudged to pay them the same, together with the damages they have sustained by the failure to perform his contract for the sale

and conveyance of the lands: *Farther*, that such other re-lief in the premises as the nature and circumstances of the case require, be granted.

The defendant answered the bill, admitting the sale of certain lands to the complainant, which he described ac-cording to the government surveys, and points out a discre-pancy in the description of the bill.   The improvements were one hundred and thirty acres of cleared land, with cer-tain buildings, the locality and character of which is desig-nated, and alledged not to be of great value.   Defendant ad-mits that he received of the intestate one hundred dollars at the time of the sale, and his three several notes, one for $2,900, due 25th December, 1836, or the 1st January, 1837; another for $3,000, due twelve months thereafter; and a third for $3,000, due twelve months after the maturity of the last.   He also admits that at the time he received the notes, he executed to the intestate a bond, conditioned to make titles to the lands when the last of the three notes should be paid to him.

Defendant denies that by the terms of the contract be-tween intestate and himself, the former was to go into pos-session of all the land purchased, but defendant was to re-tain the possession of about eighty acres of the cleared land, until all the purchase money was paid; intestate was to en-ter upon the residue, with the dwelling about 25th Decem-ber, 1836, or the 1st January, 1837.   Previous to the last mentioned period, intestate died, and his widow, who was ad-ministratrix of his estate, took possession of the dwelling house and lands, according to the contract, and retained it until the rescission of the contract as hereafter shown.

Defendant admits that Seaborn J. Westmoreland, and E-lizabeth, the wife of the intestate, administered on his estate, as alledged in the bill, and that, at different times, they paid the amount due on the first note.   After the maturity of the second, he caused an action to be brought thereon, to the circuit court of Macon, against intestate's administrators, and at their importunity, in the fall of 1838, the parties mutually agreed to rescind the contract for the sale of the land. Thereupon he dismissed his suit, and delivered to them the note last payable, and the administrator and administratrix

delivered to him the possession of the land they had occupied, and also his bond for titles; which bond was then destroyed by the defendant.

Defendant further answers, that with the exception of the one hundred dollars paid in advance, and the amount of the note for $2,900, he received nothing more upon the account of the sale; that after the rescission of the contract, and after one or both the last mentioned notes were delivered to the administrators, he receipted both these notes at the solicitation of Patrick Cousins, who had intermarried with the intestate's widow—Cousins saying that he desired those receipts to enable him to settle with the orphans' court, and the judge of that court wished him to obtain them. These receipts were given in the fall of 1841, or spring of 1842, without any consideration whatever.

He states the quantity of land cleared, while the administrators were in possession, was fifty acres, which was fenced by him; since the rescission of the contract, he has cleared 150 acres, and made valuable improvements in the way of buildings, &c.; but denies that the annual value of the rents and profits are $2,000, and insists that whatever they have been, he is entitled to them.

Defendant denies all fraud with which he is charged by the complainants—avers that the administratrix was indebted to him $200, which he yielded up at the time of the rescission, and insists that if the rescission should be adjudged invalid, the complainants are not entitled to the execution of the contract of sale, until he is paid the value of the improvements he has made upon the land, with the amount of the two notes, and interest thereon, which he delivered up. He avers, that the rescission was without solicitation on his part —that it was for the advantage of intestate's estate, while he was the loser thereby.

The answer insists on the rescission of the contract as a bar to a specific performance, and prays the benefit of a demurrer.

Afterwards, the defendant, by consent, filed an amendment to his answer, in which he states, that since he answered, he has seen the three notes which he received on the contract for the sale of the land; that they all bear date on

the 29th September, 1836, and are payable on the 1st day of January, in the years 1837, '38, and '39. In addition to the payments admitted by him, there is a credit of $141, which is correct.

Several depositions were taken at the instance of the defendant, and one by the complainant, the purport of which are noticed in the decree of the chancellor, and in the opinion of this court.

In the decree it is recited that several exceptions were taken to the testimony, all which the chancellor was inclined to think should be overruled, but he made no decision of the questions, as he was of opinion the unexceptionable parts of the testimony established the same facts as were proved by all the proof in the cause. Thereupon he concluded that the answer was substantially supported as to every essential allegation, and that the defence set up was an available bar to the relief sought by the bill ; that it was immaterial whether the rescission or compromise made with the administrators of the intestate's estate was valid or not; for if it was invalid, the complainants have no right to ask an execution of the contract, until the purchase money has been paid.

Further, it does not appear that an improper or fraudulent use was made of the notes with the receipts indorsed thereon, in the settlement with the orphans' court, and if this had been the case, the consequence could not have been visited upon the defendant, who had no agency in that transaction. As for the purchase money that had been paid, the bill had not been framed with a view to its recovery, and if such had been its object, the suit should have been brought by the administrators, and not the heirs. The bill was therefore dismissed at the complainant's costs.

W. W. McLester, with whom was A. F. Hopkins, for the plaintiff in error, made the following points : 1. The equitable title descended to the heirs of the intestate, and the administrators were liable to pay the purchase money if assets came to their hands; unless the heirs were competent to release, and actually did release them. [Newl. on Con. 42; 3 Hayw. R. 181; 3 Johns. Ch. R. 316 ; 6 Id. 402 ; 1 Stew.

& P. 216 ; 4 Porter's Rep. 385 ; 4 Ala. Rep. 682 ; 5 Id. 503.]

2. The defendant, with a knowledge of the consequences of his act, enabled the administrators to defraud the estate, by acknowledging the receipt of the money on the two notes last payable—and that the administrators had been allowed it. This must operate as an estoppel. [1 Root Rep. 206 ; 2 Id. 207 ; 2 Day's Rep. 272 ; 9 Conn. Rep. 401 ; 5 Ark. R. 566 ; 1 Camp. Rep. 392 ; 1 Esp. Rep. 173 ; 2 Term R. 366 ; 3 Johns. Rep. 68 ; 2 Porter's Rep. 526 ; 5 Id. 498 ; 7 Ala. Rep. 683 ; 14 Pick. Rep. 98.] But if it is allowable to explain or contradict the receipt, it is incumbent upon the defendant to show its correctness. [5 Ala. R. 324.]

3. Where there is no mistake or surprise on the one part, or fraud or imposition on the other, a receipt will conclude the party giving it. [2 Porter's Rep. 526 ; 5 Id. 498 ; 4 Conn. Rep. 308 ; 9 Id. 401.] The proof does not show any accident, mistake, or fraud, rendering a specifiic performance inequitable, and the intestate's estate is able to repair any loss the defendant may sustain in connection with the transactions in question. [Jeremy's Eq. 424.

4. The administrators were trustees for the heirs, and if by an arrangement with the defendant, they have succeeded in taking up the notes given for the purchase money with the proper evidence of payment to be allowed as a voucher on the settlement of the administration, the land is discharged of the equitable lien, and the defendant, if he has any claim, must look alone to the administrators. [14 Pick. R. 98.]

5. The acceptance by the defendant of $3,141, upon account of the sale, and releasing to the administratrix a debt of $200, and then taking possession of the land, was a fraud upon the intestate's estate, and he cannot insist upon the falsity of his receipts. [2 Ala. Rep. 571 ; Story on Bills, § 267 ; 1 Doug. Rep. 248.]

6. Under the prayer for general relief, the parties should have been placed in statu quo. This was the right of the parties upon a rescission of the contract. [1 Story's Equity 254 ; 7 Ala. Rep. 173.] But in no event should the complainants have been taxed with the costs ; for they

were deluded by the evidence of payment which the defendant furnished. [Freeman's Ch. R. 79.]

7. If the receipts could be contradicted, then the rents and profits should have been ascertained and set off against the purchase money, *pro tanto*, and the complainants, upon the payment of the balance, should have had their title perfected. [1 Metc. Rep. 117; 7 Ala. Rep. 742; 7 Paige's Rep. 382.]

8. Although the possession of the administratrix, her improvements and claim to dower, may, as between her and the defendant, sustain the contract for rescission, yet it cannot prejudice the heirs—their equity cannot be defeated. If a specific performance could not be decreed, then the value of the estate of the complainants should be ascertained, upon an issue of *quantum damnificatus*, and a decree rendered against the defendant for the amount. [3 Mass. Rep. 562; 8 Pick. Rep. 329.]

9. The administrators could not pass the title to the land, divested of the equity of the complainants, by rescinding the contract of the intestate to purchase it, any more than he could sell it to a third person without an order of court; consequently the complainants are entitled to a specific performance, without regard to the payment in fact of the purchase money. If it has not been paid, defendant we have said, must look to the administrator for payment.

J. E. Belser, for the defendant in error. The declarations of the intestate in respect to the contract between defendant and himself, are admissible against the latter, and where evidence of a contract which was in writing is lost, its contents may be proved by parol. [7 Wend. Rep. 136.] So it is allowable to show the declarations of the administrator while they were in possession of the land, or when the rescission took place. [1 Stew. & P. Rep. 220; 1 Ala. Rep. 344; 4 Id 40.] Even the declarations of the administrators at a subsequent time are admissible. [1 Greenl. Ev. § 189.] The administratrix is not interested in the event of this suit, and her testimony is therefore competent. [Id. § 191.]

It is discretionary with the court whether a witness shall

be asked a leading question. [1 Greenl. Ev. § 434; 7 Ala. Rep. 371.]

A receipt acknowledging the payment is open to explanation by parol evidence, showing that the money, either by mistake, misrepresentation, or from some other cause was not in fact paid. [5 Ala. Rep. 224; 2 Johns. Rep. 378; 5 Id. 68; 9 Id. 310; 9 Pick. Rep. 338; 7 Cow. Rep. 334.] And it is no objection to the admission of such proof that the answer does not charge fraud expressly—fraud may be inferred from other matters alledged. [2 Ala. Rep. 572; 3 Id. 375.] See further as to the effect of receipts as evidence, 5 Ala. Rep. 307; 7 Id. 687.]

The bill is not framed with a view to recover of the defendant the amount of the purchase money which he received, and the terms of the rescission provided for its retention by him. If the administrators had no authority to rescind, they are personally liable to the heirs, and not to the defendant. [1 Dess. Rep. 304, 559.]

A bill for a specific performance is addressed to the discretion of the court, upon a full and entire view of all the circumstances connected with the agreement. [2 Ala. R. 83; 6 Johns. Rep. 111.] And chancery will not decree a specific execution where it would operate unjustly, or be greatly prejudicial to the defendant. [1 Ala. Rep. 458; 5 Id. 604; 6 Id. 562.]

Upon a sale of lands for a consideration to be paid in future, the vendor retains a lien for the purchase money. [5 Porter's Rep. 452; 5 Ala. Rep. 397.] And where the payment of the purchase money is made a condition precedent to the execution of the title papers, if the purchaser fails to execute his part of the contract, at the appointed time, without excuse, a specific performance will not be enforced. [4 John. Ch. Rep. 559; 4 Porter's Rep. 374.

As between the representatives of the real and personal estate, land under mortgage is the primary fund to discharge the incumbrance. [2 Bro. Ch. Rep. 101; 3 Murp. Rep. 194; 3 Johns. Ch. Rep. 252.] The bonds of an intestate vest absolutely in the administrator. [9 Mass. R. 352.] Here they held defendant's bond for titles, and the greater part of the purchase money was unpaid—it was assets, and they were

authorsed to dispose f it. [1 Atk. Rep. 462; 3 Id. 235; 7 Johns. Ch. Rep. 21, 150; 5 Am. Com. L. Cas. 271.) The defendant's interest being an equitable lien, he was authorised to enter. [16 Mass. Rep. 285.] And the estate acquired by the intestate's purchase being less than a freehold, could be sold by his administrator without a license from the orphans' court. [9 Mass. Rep. 308; 1 J. J. Marsh. Rep. 168; 5 Stew. & P. Rep. 150.] In making arrangements for the benefit of an estate under their control, administrators are only required to act as prudent men. [2 Hill's Ch. Rep. 364; 2 Dev. & Bat. Eq. Rep. 442; see also, 4 Porter's Rep. 27; 5 Ala. Rep. 363; 7 Id. 920.]

If there was collusion between the administrators and defendant in the rescission, as charged in the bill, the former should have been made defendants to the bill. [1 Johns. Ch. R. 305; 7 Ala. R. 362.]

Until the estate of an intestate is finally settled, the administrators may retain the real estate as assets. [Clay's Dig. 199, § 36; 1 Ala. Rep. N. S. 226.] The bill should have averred the final settlement of the estate.

COLLIER, C. J.—The testimony in the cause very satisfactorily proves that the defendant received no more of the purchase money, than he admits in his original and amended answer was paid to him; that the receipts written on the notes, and which acknowledge their payment, was made at the solicitation of Cousins who had intermarried with the widow and administratrix of the intestate; that no money was paid to the defendant, but the receipts were given, because Cousins urged it—stating that the judge of the orphans' court desired it, and it would enable him to settle the administration account. Upon this branch of the case, it is urged for the plaintiffs in error, that the defendant's receipts are conclusive evidence of the payment of the notes by the representatives of the vendee, and that testimony under the circumstances, is inadmissible to prove the reverse; and to this point we will now address ourselves.

In Cook and Lamkin v. Bloodgood, use, &c. 7 Ala. Rep. 683, we determined, that, where one member of a partnership formed for the practice of the law, acknowledges the receipt

of money for a client, the latter need not inquire how the claim was collected, or whether paid at all, or not, but may charge the firm upon the assumption that the receipt expresses the truth; and the partner who had no agency in giving the receipt cannot gainsay its truth. Such an admission is not a technical estoppel, yet it operates as an estoppel *in pais.* Thus, where the admissions or conduct of a party are such as induce others to act upon them, and a permission to prove their falsity would operate an injury to the persons who were misled by them, they are conclusive of the facts they import. [Welland Canal Co. v. Hathaway, 8 Wend. R. 483.] In Tufts v. Hays, 5 N. Hamp. Rep. 453, it was said that a party shall be estopped by the admission of a fact, where his intent was to influence another, or derive a credit or advantage to himself. But where he has not acted with this view, and there is no breach of faith in receding, he shall not be concluded. And if no injury arises from the representation, it may be laid down generally that it will not operate as an estoppel. As where the defendant told the officer that the goods levied on by an attachment belonged to a third person; on the trial of the suit by attachment, he succeeded, and then the officer sold the goods as the property of such person : *Held,* that the defendant was not concluded, and might maintain an action for the tortious sale. [Wallis v. Truesdell, 6 Pick. Rep. 455. See also Ufford v. Lucas, 2 Hawks' Rep. 214; Robinson v. Nahon, 1 Camp. Rep. 245; Divall v. Ledbetter, 4 Pick. Rep. 220; Swartz v. Moore, 5 Serg. & R. Rep. 257; Gosling v. Birnie, 7 Bing. Rep. 339; Hawes v. Watson, 2 Barnw. & C. Rep. 540; Stephens v. Baird, 9 Cowen's Rep. 274; Chapman v. Searle, 3 Pick. Rep. 38.]

A receipt is but the admission of the party giving it that money or something else has been received by him, yet as a general rule it is inconclusive. It is not only impeachable for fraud, but it is competent to show a mistake or any erroneous or false statement in it, though designed by the parties —in a word, they may always be contradicted, varied, or explained by oral testimony, as will abundantly appear by the decisions of this and other courts. [See 2 Phil. Ev. 213 to 216; 3 Id. 1438-9, C. & H's Notes.] There is nothing in

the receipts of the defendant, or in the proof in the cause, to exempt them from the influence of this principle. It is certain that the administrators of the deceased vendee were not deceived; and so far from there being any thing in the record to show that upon the settlement with the orphans' court, the estate they represented was charged with the amount of the notes, as so much cash paid by them, such is not even pretended to be the fact, and the reverse is clearly inferrable. The defendant did not intend to injure any one by writing his receipts upon the notes, and it not appearing that any one has been injured by them, or that they have influenced the acts of any one prejudicial to the plaintiffs, they are not so conclusive as to require the rejection of extrinsic evidence. The authorities cited upon this point are direct and ample.

Having attained this conclusion, there can be no doubt that the complainants are not entitled in the present condition of the cause to the relief they seek. The bill is at fault in not alledging the payment of the purchase money or any offer to pay it; and if the bill were unobjectionable, the proof is defective in not showing a payment, or a tender.

Even conceding, that, after the settlement of the administration, and a discharge of the administrators from the trust, it is competent for the heirs and distributees to maintain a suit in equity for the recovery of money which was paid by their intestate upon a contract which has been rescinded since his death, and then it may be asked, whether the bill is so framed as to authorize such a decree. It is not alledged that a contract for the sale of the land by the defendant to the intestate had been put an end to, but it is explicitly affirmed that the purchase money had been paid by one or both the administrators; that S. J. Westmoreland, one of the administrators, complainants are informed and believe, fraudulently placed the boud for titles in the defendant's possession, who now retains or has destroyed the same, that he may defeat the complainants' claim, and enjoy the lands. Thereupon, the complainants pray that the title be vested in them, &c.

The *premises* or *stating part* of the bill contains a narrative of the facts and circumstances of the plaintiff's case, and of the wrong or grievance of which he complains, and

constitutes in truth the real substance of the bill upon which the court is called to act. Every material fact to which the plaintiff means to offer evidence ought to be distinctly stated in the premises, otherwise he will not be permitted to offer or require evidence of such fact. A general charge or statement of the matter of fact, is however sufficient; and it is not necessary to charge minutely all the circumstances which tend to prove the general charge; for these circumstances are properly matters of evidence, which need not be charged in order to let them in as proofs. [Story's Eq. Pl. 23, 24.]

It is an unquestioned rule, that, if the complainant mistakes the relief to which he is entitled, in his special prayer, the court may afford the redress to which he is entitled, under the prayer of general relief; provided the relief, is such as is agreeable to the case made by the bill. Thus we see, although a prayer of general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill; for the court will grant such relief only, as the case stated will justify; and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another; especially, if the defendant may be surprised or prejudiced thereby. If the complainant doubts his title to the relief he wishes to pray, the bill should be framed with a double aspect, so that if the court should decide against him in one view of the case, it may yet afford him assistance in another. [Story's Eq. Plead. 40, to 43. See also Driver v. Fortner, 5 Port. Rep. 26.]

We have stated the law applicable to the frame of the bill, from which it appears, that the relief which the court grants must be adapted to, and warranted by the *premises*. Although it may be competent thus far to afford redress even under a prayer for general relief, we think it may be questioned whether the case stated, would authorize a decree under any state of proof for the amount paid by the intestate and his administrators upon the purchase of the land in controversy. But we will not determine this question, nor consider, whether, if the contract is at an end, the administrators should not have proceeded at law. The proof abundantly shows that the defendant and the administrator of the intestate agreed to rescind the contract of sale upon the latter

yielding up the entire amount that had been paid upon the purchase. By this agreement the defendant is still willing to abide, or if the authority of the administrator shall be adjudged incompetent to assent to a rescission, or if the complainants elect, he is willing to consider the contract in force, and offers to execute it, upon the residue of the purchase money being paid. If the administrator had not the power to annul the contract, and the defendant is in no default, the complainants cannot recover back what has been paid, if the defendant is willing to execute it. This is a conclusion so just, that argument is not necessary to support it—in fact, it is difficult to make it more plain than by its announcement.

This view is decisive of the cause, and relieves us from the necessity of inquiring into the extent of the powers of administrators in respect to contracts by their intestates for the purchase of real estate. We have but to add, that the decree of the court of chancery is affirmed.