# Kelly *v.* McGrath.

*Bill in Equity by Wife, to set aside Mortgage by Husband, as executed in fraud of Dower and Homestead Rights.*

1.    *Equitable relief against fraud.*—Intentional concealment or misrepresentation of material facts, by which a party is misled to his injury, is a fraud, against which a court of equity is in the constant habit of granting relief; and while fraud and injury must concur before the court will interfere, it is not necessary that the injury shall be to present, actual, existing rights, since rights which are contingent, or which are to accrue in the future, are equally entitled to protection.

2.    *Same ; secret conveyances by wife or husband, in contemplation of marriage.*—On this ground, a court of equity will set aside, as a fraud on the marital rights of the husband, a secret conveyance or settlement of her property by the intended wife, executed without his knowledge, and in contemplation of the marriage; and while the same doctrine is not applied, in England, to a secret settlement or conveyance of his property by the husband in contemplation of marriage, although its effect may be to exclude the wife from dower in his lands, the reasons on which the English rule is founded are not of force in this country, and the courts here do not adopt the rule.

3.    *Same ; mortgage by husband, in fraud of wife's rights of dower and homestead.*—A mortgage of his lands by the husband, executed in contemplation of marriage, and without the knowledge of his intended wife, for the purpose of preventing her rights of dower and homestead, as secured by constitutional and statutory provisions, from attaching to the lands, is a fraud on the rights acquired by the wife on marriage; and though the debt secured by it was a present loan of money, it will be regarded as a voluntary conveyance, when it appears that the mortgagee had knowledge of the intended fraudulent purpose of the husband, and actively participated in carrying it into effect.

[Kelly v. McGrath.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 25th November, 1879, by Mrs. Bridget McGrath, the wife of Michael McGrath, suing by her next friend, against her said husband, and one Daniel Kelly; and sought to vacate and set aside, as a fraud on the complainant's rights of dower and homestead, which accrued to her by virtue of her marriage with her said husband, a mortgage which he had executed, on the eve of his marriage with complainant, to said Daniel Kelly. The mortgage, a copy of which was made an exhibit to the bill, was dated the 8th November, 1876, and acknowledged before a notary public on the same day; purported to be given to secure the payment of a promissory not for $1,778.70, executed by said McGrath to Kelly, of even date with the mortgage, and payable two years after date; and conveyed a tract of land in Mobile county, containing about eighteen acres, which was at the time the homestead of said McGrath. The bill alleged that the complainant and said Michael McGrath were married on the 9th November, 1876; that when he commenced paying his addresses to her, in February, 1876, he having then just attained his majority, "he represented to her, as a material inducement to marry him, that he was in comfortable circumstances for a man in his condition in life, and was able to take care of her and whatever family they might have, by the industrious cultivation of said land, on which he was then living, and by economy in living, also informing her of his ownership and occupancy of said land as a homestead, and that it was unincumbered; that said representations of said facts, which complainant knew to be true of her own knowledge, constituted a substantial and material inducement on her part to marry said Michael, and she consented to marry him, on or about the first day of May, 1876, fully and implicitly believing that he owned said homestead, and that it was unincumbered." The bill alleged, also, that Kelly was a man of forty-five or fifty years of age, was living on the land with said McGrath, who was his cousin, and was anxious to obtain the ownership of said land, which was worth about $2,000, and was then cultivated by them as a market-garden, a business in which he had great knowledge and experience; that he knew said Michael would not sell the place, being attached to it as the homestead which he had inherited from his father, and also knew of his engagement to marry the complainant, and of the facts stated as an inducement to the marriage; that he knew, also, that said Michael was then somewhat dissipated, but had no need to borrow such an amount of money, "and that if said homestead were incumbered with a mortgage debt of $1,500, said Michael would never be able to redeem it." The bill al-

[Kelly v. McGrath.]

leged, also, that the mortgage, though dated on the 8th, was in fact not executed until the morning of the 9th November, only a few hours before the marriage was celebrated; that only $500 of the money, for which the note was given, was paid before the mortgage was executed, the residue being paid several days afterwards; "that said Michael and said Kelly said nothing to complainant about said mortgage, but purposely kept her in entire ignorance thereof, until she accidentally ascertained the fact, about a week after her marriage; that she then at once got from her husband all the money that he had left, about $1,300, and took it to said Kelly, and offered to return it to him, and also to raise the other $200 and return it to him, complaining to him that the transaction was a great wrong on her," but he refused to take the money; "that said Michael, her husband, afterwards took said money away from her, and she does not know what became of it;" "that said mortgage was made by said Michael at the suggestion of said Kelly, who obtained and received it with intent to defraud complainant of her rights in said land as wife, and with the knowledge, hope and expectation that said Michael would never be able to redeem said land, and that he would thus obtain it, under the power of sale contained in said mortgage, in fraud of complainant's homestead and dower rights." These were the material allegations of the bill; and the prayer was that the mortgage might be set aside and declared null and void, as fraudulent in law and in fact, and a cloud on the complainant's dower and homestead rights, and for general relief.

A demurrer to the bill, for want of equity, was interposed by Kelly, but was overruled by the chancellor; and the decree overruling it, from which the appeal is sued out (Code, § 3918), is now assigned as error.

HANNIS TAYLOR, and HENRY ST. PAUL, for appellant.—"A wife acquires by marriage no right to the property of her husband, and she can not maintain a bill in equity to set aside a deed of gift executed by him previous to the marriage, on the ground that he continued in possession, and that she married him under the impression that the property was his."—*Gibson v. Carson*, 3 Ala. 421. This decision was made nearly forty years ago, and it has never been assailed or questioned. It has thus become a fixed principle of our equity jurisprudence, as built upon the wide and rational foundations of the system established in England, except as changed by statute.—*Waldron, Isley & Co. v. Simmons*, 28 Ala. 633. This decision, it is submitted, is decisive of the case, unless the court should now determine to overrule it, and to adopt the new principle laid down by several American courts, as shown by the cases cited for the

appellee. That the husband acquires, by the mere engagement of marriage, such interest and prospective rights in the property then owned and possessed by the wife, as a court of equity will protect against secret conveyances by the wife in fraud of his rights, is well established by English decisions, which rest on solid reasons, and which have been followed by our courts. *Strathmore v. Bowes*, 1 Vesey, 22-27; 1 Lead. Eq. Cases, 449; 1 Story's Equity, § 273. But the reason of the rule does not extend to conveyances by the husband executed in contemplation of marriage, since the marriage does not impose upon the wife any liability for the debts of the husband, or any duty to support the family; and the reason of the rule ceasing, the rule itself has no application. The authorities cited by Mr. Bishop (Law of Married Women, vol. 2, § 350), in support of the position for which the appellee contends, are all American decisions, except the single case of *Douglasse v. Waad*, 1 Eng. Ch. Cases, 99; and in that case, as the report shows, the right asserted by the wife arose out of a jointure, fixed by express contract before marriage, between the husband and the wife's father. If the new American doctrine is to be established, as laid down by Mr. Bishop, it must be taken with the qualification also stated by him, "that in these cases, as in all others, a plaintiff, asking equity, must do equity;" which requires, in this case, the re-payment of the money loaned, with interest to date. But it is insisted that the doctrine itself, as laid down in all the cases cited, rests only on the ground of fraud; and that the facts stated in the bill, notwithstanding the charges of fraud, negative the idea of fraud. It is stated that the money loaned was about the full value of the land, and that the greater part of this money went into the possession of the complainant a few days after the marriage. If the alienation had been by absolute deed instead of mortgage, the transaction would have only been a conversion of the land into money, in which the wife's distributive interest, in the event of her survivorship, would be as great as in the land; consequently, such conversion could not be a fraud in law, and could not injure her. As to the claims of dower and homestead, as against the mortgage, no contingent rights have ever attached; and if they had attached on the marriage, it can not be known that they will ever become perfected.

R. INGE SMITH, and JOHN ELLIOTT, *contra.*—The bill alleges intentional or actual fraud, and states facts from which fraud is by law implied or inferred. "If a woman, on the eve of marriage, charges or conveys away her estate to a stranger, without the knowledge of her intended husband, such charge or conveyance will be void of equity, being in fraud of the rights which

[Kelly v. McGrath.]

the husband acquired to his wife's property by the marriage." Greenl. Cruise's Digest, vol. 2, mar. p. 413, § 37. This doctrine, it is added, " applies as well to a deed made by a man, as to one made by a woman."—*Ib.* 416, §§ 45–6 ; also, Bishop on Married Women, vol. 2, § 350, and cases cited by these authors. Misrepresentations as to the *status* of the husband's property, made to the bride's relatives having charge of her and her marriage, are a fraud against which a court of equity will grant relief; and this relief is granted, not only on the ground that marriage is a valuable consideration, but on the general principle on which relief is granted against fraud.— 2 Bishop's M. W. § 342; Kerr on Fraud and Mistake, 217–8 ; Madd. Ch. 292; 2 Story's Equity, § 1522; 2 Powell on Mortgages, 437–8, mar.; 1 Fonb. Eq. 266 ; 2 Atk. 40 ; *Scott v. Scott,* 1 Cox, 367 ; *Martin v. Bennett,* Bunb. 336 ; *Dolbiac v. Dolbiac,* 16 Vesey, 125 ; *Carleton v. Dorset,* 2 Vernon, 17 ; *Goddard v. Snow,* 1 Russ. 485 ; *England v. Downs,* 2 Beav. 522; *Downes v. Jennings,* 31 Beav. 290; *Roberts v. Roberts,* 3 P. W. 74, note *y; Neville v. Wilkinson,* 1 Bro. Rep. 543; *Petty v. Petty,* 4 B. Monroe, 217; *Hamilton v. Mohun,*1 P. W. 118; 11 Vesey, 167; 9 Vesey, 21; 2 Sch. & Lef. 363 ; 1 Cas. Ch. 99; 4 Myl. & Cr. 95; Prec. Ch. 131; 2 Bligh, 228; *Swaine v. Perine,* 5 Johns. Ch. 482; *Tate v. Tate,* 1 Dev. & Bat. Eq. 22; *Cranson v. Cranson,* 4 Mich. 230; *Dearmond v. Dearmond,* 10 Indiana, 194; *Freeman v. Hartman,* 45 Illinois, 551.

BRICKELL, C. J.—Intentional concealment or misrepresentation of material facts, by which one party is misled to his injury, is a fraud, against which a court of equity is in the constant habit of relieving. Of the class of cases in which the court interferes upon this ground, is a secret voluntary settlement or conveyance of her property by a woman, pending a treaty, and in contemplation of marriage, without the knowledge of the intended husband.—1 Story's Eq. § 273 ; 1 Lead. Eq. Cases, 449. By the common law, the husband, on the marriage, became entitled to all the personal property of the wife in possession, and was clothed with the right of making her choses in action his own, by reducing them to possession; and if the wife was seized of an estate of inheritance, he, *eo instanti* the marriage, became seized thereof, taking the rents and profits during their joint lives, and, by possibility, during his own life. Of her freehold estate not of inheritance, he became seized, entitled to the rents and profits during marriage; and her chattels real passed to him, with the power to dispose of them at pleasure. While the marriage was only in treaty, or contemplation, these rights were only in expectation, and they could accrue only on the marriage, when the corresponding

[Kelly v. McGrath.]

duty of the husband to maintain the wife would come into existence. They were just expectations, forming material inducements to the marriage contract; its legal results, which could not be disappointed or defeated by secret conveyances made by the wife, without fraud, and a violation of the good faith to which parties are bound in respect to all contracts.

When there was a deliberate purpose to mislead and deceive the intended husband, and to deprive him of the marital rights as defined by the law, of the invalidity of the transaction there never was a doubt. When there was no active expedient resorted to for the purpose of keeping him in ignorance of the fact that the intended wife had so settled or disposed of her property that his marital rights would not attach—when there was mere concealment, or suppression of the truth, mere neglect to disclose it, and he neglected to make inquiry, there was some division of opinion whether there was fraud *per se*. But the weight of authority, following to its logical results the doctrine asserted by Lord Thurlow, in *Strathmore v. Bowes* (1 Vesey, p. 22), that a conveyance by a woman during the course of a treaty of marriage, *without notice* to the intended husband, is a fraud, against which a court of equity will relieve, has held the woman to the duty of disclosure—has treated her neglect to disclose as an omission of legal and equitable duty, offending the trust and confidence reposed by the intended husband.—1 Lead. Eq. Cases, 450.

It is not fraud only which will authorize the interference of a court to annul contracts or instruments, or to prevent them from having full operation. Injury, damage to the party complaining, must be the consequence. "Fraud, without damage, gives no cause of action; but, when these two do concur and meet together, then an action lieth." The injury may be to present, actual, existing rights, or it may be to rights which are contingent, or which are to accrue in the future. In the case of which we have been speaking, the intended husband had no present right in or to the property of the woman. The right could accrue only in the event the contemplated marriage was solemnized; yet the acquisition of these rights entered into, and formed essential inducements, from the very nature of things, to the proposals and contract of marriage, and disappointing them was the injury the courts intervened to prevent. Conveyances, intended to hinder, delay, or defraud creditors, are valid as between the parties, and as to all the world but creditors, or *bona fide* purchasers. It is not a present, existing debt, or cause of action, which alone constitutes a creditor. A contingent liability, which may never ripen into an actual demand, is protected, equally with present debts depending upon no contingency. When the contingency happens—when the

[Kelly v. McGrath.]

liability thereby ripens into a present claim, the creditor can assail and avoid the conveyance.—*Foote v. Cobb*, 18 Ala. 585; *Gannard v. Eslava*, 20 Ala. 732; *Bibb v. Freeman*, 59 Ala. 612.

It has been said, that as the wife by marriage acquires no right in or to the property of the husband—is not in any sense, by marriage, a purchaser of his estate—she can not complain of conveyances or dispositions an intended husband may, without her knowledge, make on the eve of marriage, though the intent was to defraud her, and without notice of them she was permitted to consummate the contract of marriage. The doctrine of the English Court of Chancery seems to be, that an alienation or settlement by the intended husband, although made on the eve of marriage, excluding the intended wife from dower, can not, after marriage, be impeached as a fraud upon her rights.—1 Scribner on Dower, 560. The reasons for distinguishing such a conveyance from a similar conveyance by the intended wife, are, that she by marriage does not acquire such rights to the property of the husband, as he acquires to hers; and because in England, on marriage, estates are usually so settled or conveyed as to prevent dower attaching; and it is not therefore presumed that the woman was induced into the contract in expectation of acquiring the right to dower. The latter reason can have no application in this country, where settlements on marriage, operating to bar dower, are of rare occurrence, and when the fact is that dower is a right, which every man must presume the woman expects and intends shall follow the marriage, as certainly as its other incidents.

The first reason—that by marriage the wife acquires no right to the property of the husband—is true only partially as to real estate, in which the husband, during coverture, has a perfect equity, or the legal title. During coverture, dower may not be, strictly speaking, an estate in lands. It may be, rather, a mere expectancy—"a capacity to take if the wife survives;" and after the death of the husband, until assignment, the right may lie in action. It is, nevertheless, a valuable right, which, though inchoate, can not be defeated by any act or alienation of the husband. The wife has capacity to release, and, as a condition of the release, may require a consideration moving solely to herself.—*Hoot v. Sorrell*, 11 Ala. 336; *Bailey v. Litten*, 52 Ala. 282. It is an incumbrance on the lands of the husband, which will excuse his vendee from performance of an executory contract of sale.—1 Brick. Dig. 612, § 7. The law confers the right, and the purpose is, if the wife survives, that she may have the means of sustenance for herself, and the nurture and education of her children. Inchoate simply on marriage it may be, and during coverture dependent for its full consummation upon the death of the husband; arising solely by operation

[Kelly v. McGrath.]

of law, springing silently from, and incidental to the marriage relation, it is a valuable right, the relinquishment of which will form a valuable consideration for a settlement by the husband, or a conveyance by a stranger; it must be under the protection of the law, and frauds upon it—frauds designed to prevent it from attaching—must be of legal cognizance, and capable of being defeated. That it is incipient,—only one of the facts on which it depends, marriage, having occurred—that it is uncertain whether the other fact, death of the husband the wife surviving, will ever occur,—renders it contingent. So it is of the liability of a grantor in a conveyance intended to defraud creditors, dependent upon the possibility of future events which may not come to pass. Any machination or contrivance, intended to disappoint and defeat future possible rights and interests, which have commenced legally, and are recognized by law, must be as odious to a court of equity, as if the right and interest was capable of present enjoyment. The relief the court will grant, varies according to the nature of the case; yet the right to relief, adapted to protection against, and the prevention of the wrong, in either case is within the jurisdiction of the court. No branch of equity jurisdiction is more salutary, than that which is exercised for the protection of possible future rights and interests. A legacy, the vesting and payment of which is uncertain, dependent upon a contingency which may or may not happen in the future, will be taken under the care of the court, and the executor either compelled to give security for its payment, if the contingency should arise, or to pay it into court to await the happening of the contingency. 1 Story's Eq. § 603

That a husband, in contemplation of marriage, may commit frauds upon the rights which, on the marriage, would accrue to the intended wife, from which, after marriage, a court of equity will relieve her, as it relieves the husband from the ante-nuptial frauds of the wife, is recognized by a large number of adjudications in this country, and has the sanction of a direct decision by Chancellor Kent.—2 Bish. Mar. Women, §§ 352-353; 1 Scrib. Dower, 560 564; *Swaine v. Perine,* 5 Johns. Ch. 482; *Cranson v. Cranson,* 4 Mich. 230; *Petty v. Petty,* 4 B. Mon. 215; *Tate v. Tate,* 1 Dev. & Bat. Eq. 22; *Smith v. Smith,* 2 Halst. Ch. 515; *Jenney v. Jenney,* 24 Vt. 324; *Dearmond v. Dearmond,* 10 Ind. 191. We confess an inability to distinguish the ante-nuptial frauds of the husband, from the ante-nuptial frauds of the wife, or to perceive any sound reason for repudiating and avoiding the one, while permitting the other to work out its injury and injustice. The fraud of the woman defeats and disappoints the just expectations of the intended husband; and his fraud defeats and disappoints equally her just expecta-

[Kelly v. McGrath.]

tions. There can be no presumption that she is, less than he, influenced by prudential considerations, or is unmindful, on entering into the contract of marriage, of acquiring a home in the event of her widowhood, and the means of sustenance for herself, and of nurture and education for her children when consigned to orphanage.

The alienations or conveyances made by the husband on the eve of marriage, intended for the deprivation of the rights which would accrue to the wife, in the cases to which we have referred, were voluntary,—founded wholly on a *good*, as distinguished from a *valuable* consideration. The mortgage now assailed has for its consideration a cotemporaneous debt; and in the absence of bad faith on the part of the mortgagee, he would stand as a *bona-fide* purchaser, entitled to the protection of a court of equity. Frauds may be, and are as often probably, perpetrated by purchases and conveyances founded on a valuable consideration, as by voluntary conveyances founded on mere generosity and affection. Good faith, as well as a valuable consideration, must attend any contract or conveyance which operates to the deprivation of the legal or equitable rights of strangers.—2 Brick. Dig. 18, §§ 70–71. If there is an intent to defraud, common to both parties to the contract or conveyance, that intent, though the consideration is valuable and ample, will vitiate, and justify the removal of it, as an obstruction to the enforcement of rights it may be intended to defeat. If the allegations of the bill are true—and the demurrer admits them—the mortgagee was the most active agent in contriving the mortgage, for the exclusion of the rights of the intended wife; and if he loses, he pays only the penalty of his bad faith. He can not claim, and is not in good conscience entitled to, higher consideration and protection than is extended to voluntary donees, the passive recipients of the donor's bounty.

The bill avers the mortgage was designed, not only to defeat the wife's inchoate right of dower, but to deprive her of homestead in the premises, and to evade the constitutional and statutory restraint upon alienation by the husband alone. The right in and to the homestead of the husband the wife acquires, the silent effect of the relation, springing up by operation of law, is a present right, capable of present enjoyment, and which is placed not only beyond the misfortunes or improvidence of the husband, but beyond his power of impairing by alienation. Though the dower of the wife can not be barred by the aliention of the husband in which she does not join, a present right of entry and of possession would pass to the alienee, his estate being incumbered only by the contingent right of the wife to dower if she survived. The alienation of the homestead, in

[Kelly v. McGrath.]

which the wife does not join, is void absolutely—confers no estate or right of entry on the alienee, and can not be used to disturb the possession of the husband, or the occupancy of the wife. During the life of the husband, the right to the use and occupation of the homestead by the wife as a home, and as a means of sustaining herself and her children, can not be lost, unless it is by an alienation in which she joins with the husband, or by his voluntary abandonment of the premises, under such circumstances as compel her, in obedience to duty, to follow him. The right of homestead is, consequently, of equal dignity with the inchoate right of dower, and is, in some respects, a more substantial interest. Both rights rest in expectancy, pending a treaty of marriage, and can not be disappointed by conveyances made by the husband with the purpose of defeating them, of which she is not informed until after the marriage is consummated.

The mortgage to Kelly was, according to the averments of the bill, a deliberate contrivance between him and the intended husband to defraud the complainant of dower and the right of homestead. Fraud, deliberate and intentional, will vitiate any contract, whatever may be its dignity, infected by it. So far as it operates upon the dower of the complainant, she is entitled to a decree declaring it void. Though the husband is in life, and she may not survive him, whereby her right of dower would be consummate; yet there is the possibility that the right may become consummate, and it is protection in that event to which she is now entitled, before the estate has passed to innocent purchasers, while the transaction is recent, and witnesses are in life and within her reach.

As to the homestead, if the mortgage was intended to operate on, and deprive her of the rights she could have acquired to it by the marriage, it should be declared void as to such rights—incapable of being employed to disturb the possession of the husband, during the continuance of the marriage relation, and, if the wife survived him, incapable of being used to disturb her occupancy during her life, or the possession of any child or children born of the marriage, during their minority.

The decree of the chancellor, overruling the demurrer to the bill, must be affirmed.

NOTE BY REPORTER.—On petition for re-hearing by the appellant's counsel, the foregoing opinion was withdrawn, but was again filed during the ensuing December term, 1881, and with it the following opinion.

SOMERVILLE, J.—After the opinion was delivered in this case by the Chief-Justice, at the November term, 1880, it was

restored to the docket for re-argument, on application by appellant's counsel petitioning for a re-hearing. Since the second argument at bar, the case has been re-considered with great care, and the whole court unanimously concur in the conclusion that. the decree of the Chancery Court should be affirmed.

It is an admitted fact, that the conveyance made by the husband was effected for, the purpose of defeating the intended wife's inchoate right of dower, and to deprive her of a homestead in the premises conveyed. It can not be denied that this expectancy on the part of the wife was a valuable property to which she might become contingently entitled. Her deprivation of it has been accomplished by an admitted fraud, and the purchaser bought with full knowledge of the husband's fraudulent design. We fully concur in the opinion of the Chief-Justice, holding such alienaton to be voidable at the option of the wife, as a fraud on her rights. Courts of equity have always intervened to set aside conveyances made by a woman on the eve of marriage, which are shown to be a fraud on the intended husband's marital rights. Even-handed justice requires that the vast and benign power of the same court should be exerted with equal diligence to forbid a man's denuding himself of his property in contemplation of marrying an intended wife. In sound reason and principle, there is no just distinction between the fraud by the woman on the man in the one case, and that by the man on the woman in the other. The difference, in our opinion, is one of degree only, and not of kind.—2 Bish. on Law of Married Women, §§ 350–351, and cases cited; *Brown v. Bronson*, 35 Mich. 415 ; *Leach v. Duvall*, 8 Bush. (Ky.), 201.

Let the decree of the chancellor be affirmed.