OLIVER GREEN v. HARRIET F. GREEN, *et al.*

HUSBAND AND WIFE; *Deed in Fraud of Marital Rights.* Where a widow, who was at the time of her engagement to be married, the owner of one hundred and sixty acres of land in this state, which was all of her property and her sole means of support, induced one G., a cripple, possessed of only a few hundred dollars, to make a matrimonial engagement with her and marry her on her verbal promise and agreement that the farm was her own, and that its proceeds should go to their support after they were married so long as they lived; and G., who was loth to make the marriage engagment or to marry, until assured of some support after marriage, relying upon said verbal promise and agreement, married such widow, and after the marriage lived with her as his wife, furnishing rooms and buying food and clothing for the family, and also for the children of his wife by her former marriage, and permitting her to use

one hundred dollars of his own money to pay a mortgage upon the farm, and the wife, about eighteen months after the marriage, delivered to her daughters by her former marriage deeds of her farm, which deeds were signed and executed by her for the consideration of love and affection only, and without the knowledge or consent of G., just on the eve of her marriage: *Held*, That the deeds are in fraud of the rights of G., and that G. may maintain an action during the life of his wife to set the same aside and have them declared invalid. (*Hafer v. Hafer*, 33 Kas. 449; *Busenbark v. Busenbark*, 33 id. 572.)

### Error from Shawnee District Court.

ACTION brought by *Oliver Green* against *Harriet F. Green* and five others, to set aside certain deeds which plaintiff alleged to be fraudulent as to him. The defendant, *James H. Easterday*, demurred to plaintiff's petition, on the ground that it does not state facts sufficient to constitute a cause of action. January 25, 1885, the court sustained the demurrer. This ruling plaintiff brings to this court for review. The material facts are stated in the opinion.

*Welch, Lawrence & Welch*, for plaintiff in error.

*Stumbaugh, Arnold & Hilton*, for defendant in error Easterday.

The opinion of the court was delivered by

HORTON, C. J.: Harriet F. Wilcox, being the owner of certain real estate, and about to be married to Oliver Green, signed and executed deeds of all of her real estate to her children the day before her marriage. The deeds were made without the knowledge or consent of her intended husband, and for no other consideration than love and affection. The grantees of Harriet F. Wilcox, now Harriet F. Green, executed deeds to the property to James H. Easterday, who at the time had knowledge of all the circumstances attending the execution of the deeds to them. Oliver Green, the husband, attempts to set aside these deeds, alleging that the same are fraudulent as to him. The defendant, James H. Easterday, demurred to the petition of plaintiff, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer

being sustained by the court, the plaintiff now brings the case here for review.

On the part of the defendants it is claimed that the sole question for our consideration is, whether a voluntary conveyance of all her real estate executed by a woman on the eve of marriage, without the knowledge or consent of her intended husband, is fraudulent as to his marital rights. If this were the only question in the case we might, perhaps, repeat what is said in *Butler v. Butler*, 21 Kas. 525, that "it may be doubted whether it is the law in Kansas to-day that such a conveyance is fraudulent." Under the allegations of the petition, however, a very different question is presented. The petition, among other things, alleges that in August, 1882, Oliver Green and Harriet F. Wilcox were engaged to be married; that at the time of the engagement, Harriet F. was the owner of a farm of 160 acres, in Shawnee county, in this state; that the farm was all the property belonging to her; that Oliver Green was possessed of only a few hundred dollars in cash; that Harriet F. Wilcox induced Oliver Green to make the matrimonial engagement with her and to marry her, representing to him at the time of the engagement that the farm belonged to her, and that its proceeds should go to their support after they were married so long as they lived, and then to her children; that the proceeds of the farm were ample to keep both parties; that Green was loth to make any marriage engagement or to marry Harriet F. without some assurance of support, as he was a cripple, having lost his right forearm; that on account of these promises and other similar representations of Harriet F., and relying thereon, Green married her August 31, 1882; that the parties then proceeded to live together as husband and wife, in the city of Topeka; that plaintiff furnished rooms and bought food and clothing for his family, also for a single daughter of his wife, and for her widowed daughter and two little children; that the plaintiff received none of the proceeds of the farm, although his wife controlled and rented the same in her own name; that at the time of the marriage there was a mortgage of one hundred

dollars upon the farm, and with money belonging to the plaintiff his wife paid off the mortgage February 14, 1883; that subsequently, without any reason or provocation, she deserted her home and husband; that on August 30, 1882, on the eve of her marriage, Harriet F. Wilcox, without the knowledge or consent of plaintiff, signed and executed deeds purporting to convey her farm — being all of her own means of support — to her daughters by a former marriage, without other consideration than love and affection; that these deeds were not delivered until March 5, 1884 — long after the marriage. They were then recorded in the office of the register of deeds of Shawnee county.

For the purposes of this case, all the allegations of the petition must be taken as true. Therefore we must assume there was a verbal ante-nuptial contract existing between Oliver Green and Harriet F. Wilcox at the time of their marriage; that the marriage was consummated by Green on account of his reliance upon the ante-nuptial contract; and that Harriet F. Wilcox, now Green, has been guilty of misrepresentation, deception and actual fraud toward Oliver Green before and after her marriage. The question is, whether, under all these circumstances, the deeds delivered subsequent to the marriage can be set aside as fraudulent to the husband. We decided in *Hafer v. Hafer*, 33 Kas. 449, that—

"The statutes of this state recognize the right of parties contemplating marriage to make settlements and contracts relating to and based upon the consideration of marriage, and that an ante-nuptial contract providing a different rule than the one prescribed by law for settling their property rights, entered into by persons competent to contract, and which, considering the circumstances of the parties at the time of making the same, is reasonable and just in its provisions, should be upheld and enforced."

And we further decided that "Marriage is a good and sufficient consideration to sustain an ante-nuptial contract." Sec. 6, of chapter 43, Comp. Laws of 1879, of the statute for the prevention of frauds and perjuries, provides:

"No action shall be brought . . . to charge any person upon any agreement made upon consideration of marriage, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

But for this statute, we suppose it would be conceded that the ante-nuptial contract might be enforced, or at least that the deeds of Harriet F. Green, late Wilcox, attempting to convey, without consideration, all of her real estate, so as to deprive herself of the power of carrying out her promises and contract, would be invalid as a fraud upon her husband.

"It is generally true that representations on which a marriage is had are upheld in equity on the ground of fraud; and where there is no fraud, the rule does not apply. . . . Actual fraud will in equity break through any law that is not penal or political in character, through any law written or unwritten which goes only to the rights of the parties, and has no public object to serve apart from doing justice between man and man." (1 Reed on Statute of Frauds, § 175. See also *Jenkins v. Eldredge*, 3 Story, 181; *Durham v. Taylor*, 29 Ga. 166.)

In *Glass v. Hulbert*, 102 Mass. 24, it was said :.

"The marriage, although not regarded as a part performance of the agreement for marriage settlements, is such an irretrievable change of situation that if procured by artifice upon the faith that the settlement had been, or the assurance that it would be executed, the other parties are held to make good the agreement and not permitted to defeat it by pleading the statute."

In *Petty v. Petty*, 4 B. Mon. 215, the wife, in her petition, charged that her husband, being much the elder and in good circumstances, as an inducement to the contract of marriage and as a means of providing for her support in the event of his death, before their marriage promised her that if she would marry him he would immediately after the marriage make a deed of settlement, etc. A few days after the marriage, her husband disclosed to her for the first time that he had been

induced by certain persons to make over his property before he married. The court said, in passing upon the case, that "the wife has been fraudulently deprived of the right of dower by the deeds in question; to that extent at least of this interest, if no further, their execution was a fraud upon her and ought not to stand."

In *Southerland v. Adm'r*, 5 Bush, 591, it is held that—

"As between parties, an oral ante-nuptial contract that neither party should claim or interfere with the property of the other any more than if they had not married, is unquestionable, and also as to all claiming as volunteers under them."

In this case, in addition to the oral ante-nuptial contract between the parties, the deed, although executed just upon the eve of marriage, was not delivered until long after; and as a deed takes effect only from the time of its delivery, therefore it had no force until after the marriage. (*Railroad Co. v. Owen*, 8 Kas. 410; id. 419; *Babbitt v. Johnson*, 15 id. 252; *Mitchell v. Skinner*, 17 id. 565; *Harrison v. Andrews*, 18 id. 535.)

In *Busenbark v. Busenbark*, 33 Kas. 572, we held that—

"While the wife's right and interest in the real estate of her husband not occupied by the family as a homestead is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband to prevent its wrongful alienation or disposition under fraudulent judgments procured and consented to by the husband with the object and for the purpose of defeating the wife's right."

Upon the well-established doctrine that fraud takes any case out of the statute of frauds, and the principle declared in

<span style="float:left">Deeds, in fraud of marital rights, set aside.</span> *Busenbark v. Busenbark*, we conclude that the deeds in controversy are in fraud of the rights of plaintiff, and that he is entitled to have them set aside. (See also *Youngs v. Carter*, 10 Hun, 194; *Petty v. Petty*, supra; *Kelly v. McGrath*, 70 Ala. 75; *Freeman v. Hartman*, 45 Ill. 57.) .

The defendant, James H. Easterday, having purchased his

title with full knowledge of plaintiff's rights, can have no better title than his grantors.

The judgment of the district court will be reversed, and the cause remanded with directions to overrule the demurrer.

All the Justices concurring.